Filed 3/18/13  P. v. Aguirre CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MANUEL AGUIRRE et al.,<br><br>    Defendants and Appellants. | B238540<br><br>(Los Angeles County<br>Super. Ct. No. BA378327) |

APPEAL from judgments of the Superior Court of Los Angeles County, William N. Sterling, Judge.  Affirmed.

Linn Davis, under appointment by the Court of Appeal; Law Offices of Andy Miri, and Andy Miri for Defendant and Appellant Manuel Aguirre.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant Luis Carranza.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Manuel Aguirre appeals from his three convictions for second degree robbery.[1]  Defendant and appellant Luis Carranza appeals from his three second degree robbery convictions, from his convictions for short barreled shotgun or rifle activity and assault with a firearm, and from the findings that he personally used a firearm in the commission of the robberies and in the commission of the assault with a firearm.  We affirm.

## PROCEDURAL BACKGROUND

In a second amended information, the District Attorney of Los Angeles County charged Aguirre and Carranza with three counts of second degree robbery.  (Pen. Code, § 211[2].)  The District Attorney also charged Carranza with short barreled shotgun or rifle activity (former § 12020, subd. (a)(1), now § 33215) and assault with a firearm (§ 245, subd. (a)(2)).  As to the robberies, the District Attorney alleged that a principal was armed with a firearm (§ 12022, subd. (a)(1)); that a principal personally used a firearm (§ 12022.53, subds. (b) & (e)(1)); and that the robberies were committed for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)(C).)  The District Attorney further alleged that Carranza personally used a firearm in the commission of all of the offenses (§ 12022.5, subd. (a)) and that he committed the short barreled shotgun or rifle activity and assault with a firearm offenses for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)(B) & (b)(1)(A).)  The jury found Carranza guilty of short barreled shotgun

---

[1]    Counsel originally appointed for Aguirre filed an opening brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436.  We granted Aguirre's request to substitute new counsel for appointed counsel.

[2]    All statutory citations are to the Penal Code unless otherwise noted.

activity, but found not true the gang sentence enhancement allegation with respect to that offense. The jury was unable to reach verdicts on the remaining counts, and the trial court declared a mistrial as to those counts. The jury was unable to reach a verdict on any count as to Aguirre, and the trial court declared a mistrial as to all counts.

In a retrial of the remaining charges and allegations, a jury found Aguirre and Carranza guilty of three counts of second degree robbery (§ 211) and also found Carranza guilty of assault with a firearm (§ 245, subd. (a)(2)). The jury found true the allegation as to Aguirre that a principal was armed with a firearm in the commission of the robberies. (§ 12022, subd. (a)(1).) As to Carranza, the jury found true the allegations that Carranza personally used a firearm in the commission of the robberies (§ 12022.53, subd. (b)) and in the commission of the assault with a firearm (§ 12022.5). The jury was unable to reach findings on the gang sentence enhancement allegations as to all offenses (§ 186.22, subd. (b)(1)(C)) or on the personal use of firearm allegations (§ 12022.53, subds. (b)(1)(B) & (e)(1)) as to the robberies, and the trial court declared a mistrial as to those allegations. The trial court sentenced Aguirre to five years and Carranza to 15 years in state prison.

On appeal, Aguirre contends that the trial court erred in denying his request to instruct the jury with CALCRIM No. 1750 on receiving stolen property as a lesser related offense to robbery; the trial court erred in failing to instruct the jury, sua sponte, with CALCRIM No. 1603 on aider and abettor intent for robbery; and there is insufficient evidence to support his convictions for robbery. Carranza contends that the trial court erred in denying his *Wheeler*/*Batson*[3] motion, and there is insufficient evidence to support his convictions and the personal use of a firearm findings. Carranza joins in Aguirre's contentions that benefit him.

---

[3]    *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*); *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*).

# FACTUAL BACKGROUND[4]

About 5:45 p.m. on November 18, 2010, Luis Solis, Jorge C., and Israel R. were walking to Israel's home in Los Angeles when a green SUV[5] stopped abruptly in front of Israel's home. Two men got out of the back of the SUV and ran toward Solis and his companions. The men were carrying guns in their hands and lifted their shirts to partially cover their faces. The men closed to within an "arm's length" of the boys. Carranza pointed his gun at Solis and said, "give me your stuff," then reached into Solis's pocket and removed his iPhone and earphones. Carranza also pointed his gun at Jorge's face. Carranza reached into Jorge's pocket and took out papers. Carranza threw the papers on the ground. The other gunman pointed his gun at Israel and took Israel's Sprint phone. Carranza and his companion ran back to the SUV and got in the back. Jorge and Israel saw a third person in SUV's driver's seat. Solis and his friends walked to Israel's home and called the police who arrived in about 10 or 15 minutes.

Los Angeles County Deputy Sheriff Alejandro Lomeli spoke with Solis, Jorge, and Israel for about 15 to 20 minutes. According to Deputy Lomeli, all three boys were "really scared." After taking the boys' statements, Deputy Lomeli left to look for the SUV. About two minutes later, he found an SUV that matched the boys' description of their assailants' vehicle. The SUV, an older model green Land Rover, was stopped at a stop sign.[6] Deputy Lomeli and other officers executed a traffic stop of the SUV. Aguirre, Anthony Ibarra, and Carranza were inside the vehicle. Aguirre was in the driver's seat, Ibarra was in the front passenger seat, and Carranza was in the rear passenger seat.

---

**4**    We omit a recitation of the gang evidence because the jury did not return findings on the gang allegations and defendants have not raised on appeal any issues with respect to those allegations.

**5**    Israel identified the SUV as a Land Rover and Jorge describe it as "Jeep Cherokee kind of."

**6**    The registered owner of the vehicle was "Manuel Aguirre Barrios."

Aguirre was ordered out of the SUV.  Deputy Lomeli searched Aguirre and found an iPhone in his right front pants pocket.  Aguirre was placed in a patrol car.  Ibarra and Carranza also were ordered out of the SUV and placed in patrol cars.  During the traffic stop, Deputy Lomeli found a Sprint Samsung cell phone near the vehicle, about two feet from the rear passenger door.

Solis, Jorge, and Israel were brought to the location to view the suspects.  All three boys identified Ibarra and Carranza as the two men with guns.  The boys were "positive" of their identifications.  None of the boys could identify Aguirre.  All three boys identified the SUV as the vehicle that had been used in the robberies.  Deputy Lomeli showed the iPhone to Solis.  Solis recognized the iPhone as his and identified telephone numbers in the iPhone.  Deputy Lomeli showed the Samsung cell phone to Israel.  Israel "looked through" the cell phone and satisfied Deputy Lomeli that it was Israel's phone.

## DISCUSSION

### I.      Sufficiency Of The Evidence

Aguirre and Carranza contend that their convictions and the firearm sentence enhancements are not supported by sufficient evidence.  Sufficient evidence supports the convictions and firearm enhancements.

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Avila* (2009) 46 Cal.4th 680, 701.)  "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence. [Citation.]" (*People v. Medina* (2009) 46 Cal.4th 913, 919.)  "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  "In deciding the sufficiency of the evidence, a reviewing

5

court resolves neither credibility issues nor evidentiary conflicts.  [Citation.]  Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.”  (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

“Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom.”  (*People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064.)  “We ‘must accept logical inferences that the jury might have drawn from the circumstantial evidence.  [Citation.]’  [Citation].”  (*People v. Zamudio, supra,* 43 Cal.4th at pp. 357–358.)  “The standard of review is the same when the prosecution relies mainly on circumstantial evidence.”  (*People v. Valdez* (2004) 32 Cal.4th 73, 104.)

### A.    Aguirre

Aguirre contends that there is insufficient evidence to support his second degree robbery convictions because there was no evidence that he was the getaway car driver at the time the robberies were committed.  Instead, he argues, there was only circumstantial evidence that he was the driver because he was later found driving the getaway car.  Aguirre also apparently contends that there was insufficient evidence to support the jury’s finding against him that a principal was armed in the commission of the robberies within the meaning of section 12022, subdivision (a)(1) because the evidence did not show that he was personally armed with a firearm.

The circumstantial evidence is sufficient to support the jury’s conclusion that Aguirre was the getaway driver and that he intended to aid and abet the robberies.  The SUV stopped abruptly in front of Israel’s house.  Two men got out of the SUV; robbed Solis, Jorge, and Israel; and got back in the SUV through the back doors and the vehicle was driven off.  Not more than 37 minutes after the robberies, Aguirre was stopped while driving an SUV that matched the description of the vehicle used in the robberies.  Carranza and Ibarra, whom each of the victims positively identified as the two men who exited from the back of the SUV with firearms, were in the vehicle.  Deputy Lomeli searched Aguirre and found Solis’s iPhone in Aguirre’s right front pants pocket.  Based on such circumstantial evidence, a reasonable juror could find beyond a reasonable doubt

6

that Aguirre was driving the SUV and intended to aid and abet the robberies when he stopped the SUV abruptly in front of Israel's home, waited for Carranza and Ibarra to rob the boys, and then drove Carranza and Ibarra away. (*People v. Avila, supra,* 46 Cal.4th at p. 701; *People v. Medina, supra,* 46 Cal.4th at p. 919; *People v. Zamudio, supra,* 43 Cal.4th at pp. 357-358; *People v. Valdez, supra,* 32 Cal.4th at p. 104; *People v. Ugalino, supra,* 174 Cal.App.4th at p. 1064.)

The jury's finding that a principal was armed with a firearm in the commission of the robberies did not depend on evidence that Aguirre was personally armed. Section 12022, subdivision (a)(1) provides, "Except as provided in subdivisions (c) and (d), any person who is armed with a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment pursuant to subdivision (h) of Section 1170 for one year, unless the arming is an element of that offense. *This additional term shall apply to any person who is a principal in the commission of a felony or attempted felony if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm.*" (Italics added.) Accordingly, because Ibarra and Carranza were armed with firearms (see below regarding Carranza's arming), Aguirre, a principal in the robberies as the getaway driver, did not need to be personally armed for section 12022, subdivision (a)(1) to apply.

### B. Carranza

Carranza contends that there is insufficient evidence to support his second degree robbery and assault with a firearm convictions because the identification evidence is weak.[7] The evidence is weak, Carranza contends, because the two men who were carrying guns partially concealed their faces, the victims viewed the suspects briefly as the robbery lasted only five minutes. Jorge identified Carranza at the preliminary hearing

---

[7] It appears that Carranza does not contend that insufficient evidence supports his short barreled shotgun activity conviction. If his convictions are not reversed, Carranza requests that they be reduced to receiving stolen property. Because we find substantial evidence that Carranza was guilty of second degree robbery, there is no basis for reducing his offenses to receiving stolen property.

7

as the person who robbed him, but identified Aguirre at trial as the robber.  With respect to that discrepancy in Jorge's identifications, Carranza notes, Jorge testified that the incident occurred "a while back" and his "knowledge" was "kind of blurry" at the time of the trial.  As to the firearm enhancements, Carranza argues that the evidence is insufficient because no guns were found.  That the evidence is weak is shown, Carranza contends, by the fact that the first jury was unable to reach verdicts on the robbery charges and firearm enhancements.

Substantial evidence was presented that Carranza was one of the perpetrators.  Carranza was stopped in the SUV that was used in the robberies.  Property taken during the robbery was found near the SUV and in the pocket of one of the vehicle's occupants.  Deputy Lomeli testified that at the field show up Solis, Jorge, and Israel identified Carranza as one of the two gunmen.  According to Lomeli, the boys did not hesitate in indentifying Carranza and were "positive" of their identifications.  At trial, Solis identified Carranza as one of the gunmen.  Israel testified at trial that Carranza pointed a gun at Jorge.  Such evidence is sufficient for a reasonable juror to conclude that Carranza was one of the assailants and that he personally used a firearm in the robberies and in assaulting Jorge.  It was the jury's task to decide whether the victims had sufficient time to view their assailants and to resolve any discrepancies in Jorge's identifications.  (*People v. Young, supra,* 34 Cal.4th at p. 1181.)

Carranza cites no case that holds that there is insufficient evidence to support a firearm enhancement if law enforcement was unable to recover the firearm.  Instead, where a firearm is not found, the prosecution may rely on a victim's description of the weapon.  (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1436-1437; *People v. Hayden* (1973) 30 Cal.App.3d 446, 452, overruled on another point by *People v. Rist* (1976) 16 Cal.3d 211, 223, fn. 10.)

## II.    CALCRIM No. 1750

Aguirre contends that the trial court erred in denying his request to instruct the jury with CALCRIM No. 1750[8] on receiving stolen property as a lesser related offense to robbery.  The trial court did not err.

Defense counsel requested the trial court to instruct the jury with CALCRIM No. 1750 on receiving stolen property as a lesser related offense to robbery.  Defense counsel acknowledged that he was not entitled to such an instruction under *People v. Birks* (1998) 19 Cal.4th 108, but stated that he was making the request to "preserv[e] any federal constitution grounds that have not been addressed."

"Our Supreme Court has stated, 'A defendant has no right to instructions on lesser related offenses, even if he or she requests the instruction and it would have been supported by substantial evidence, because California law does not permit a court to instruct concerning an uncharged lesser related crime unless agreed to by both parties. ([*People v.*] *Kraft* [(2000)] 23 Cal.4th [978,] 1064–1065 [99 Cal.Rptr.2d 1, 5 P.3d 68]; [*People v.*] *Birks* [(1998)] 19 Cal.4th [108,] 136–137 [77 Cal.Rptr.2d 848, 960 P.2d 1073].)  (*People v. Jennings* (2010) 50 Cal.4th 616, 668 [114 Cal.Rptr.3d 133, 237 P.3d 474].)  In overruling its decision in *People v. Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr.

---

[8]    CALCRIM No. 1750 provides, in relevant part:

"To prove that the defendant is guilty of this crime, the People must prove that:

"1.  The defendant (bought/received/sold/aided in selling/concealed or withheld from its owner/aided in concealing or withholding from its owner) property that had been (stolen/obtained by extortion);

"[AND]

"2.  When the defendant (bought/received/sold/aided in selling/concealed or withheld/aided in concealing or withholding) the property, (he/she) knew that the property had been (stolen/obtained by extortion)(;/.)

[AND

"3.  The defendant actually knew of the presence of the property.]"

9

45, 674 P.2d 1303], in which the court permitted a defendant to determine unilaterally on what lesser related offenses a trial court must instruct the jury, the court in *People v. Birks, supra,* 19 Cal.4th at page 136 stated that a criminal defendant does not have 'a unilateral entitlement to instructions on lesser offenses which are not necessarily included in the charge.'" (*People v. Hall* (2011) 200 Cal.App.4th 778, 781.) Moreover, ""'"[T]here is no federal constitutional right of a defendant to compel the giving of lesser-related-offense instructions. [Citation.]" [Citation.]' (*People v. Foster* (2010) 50 Cal.4th 1301, 1343 [117 Cal.Rptr.3d 658, 242 P.3d 105]; see also *People v. Kraft, supra,* 23 Cal.4th at p. 1064 [defendant not entitled to instruction on lesser related offense even if supported by evidence].)" (*Id.* at p. 783.) The trial court was bound, as are we, by the Supreme Court's decision in *People v. Birks*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Accordingly, the trial court did not err in denying defense counsel's request that it instruct the jury with CALCRIM No. 1750.

Even if the trial court erred in failing to instruct the jury with CALCRIM No. 1750, any error was harmless. From the evidence recited above, it is not reasonably probable that Aguirre would have received a more favorable outcome if the jury had been instructed with CALCRIM No. 1750. (*People v. Hall, supra,* 200 Cal.App.4th at p. 781; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

### III. CALCRIM No. 1603

Aguirre contends that the trial court erred in failing to instruct the jury with CALCRIM No. 1603 on the formation of intent to rob for an aider and abettor to a robbery. Defendant's contention is without merit as the trial court did instruct the jury with CALCRIM No. 1603.

### IV. *Wheeler/Batson*

Carranza contends that the prosecutor systematically excluded from the jury panel female Hispanic prospective jurors who were qualified and willing to sit as jurors. Because the prosecutor's challenges were not justified by proper race-neutral reasons,

10

Carranza argues, the trial court erred in denying his *Wheeler*/*Batson* motion. The trial court did not err.

### A. *Relevant Legal Principles*

The state and federal Constitutions prohibit an advocate from using peremptory challenges to exclude prospective jurors based on race or gender. (*People v. Bonilla* (2007) 41 Cal.4th 313, 341.)[9] In *Wheeler, supra,* 22 Cal.3d 258, the California Supreme Court held that "the right to trial by a jury drawn from a representative cross-section of the community is guaranteed equally and independently by the Sixth Amendment to the federal Constitution and by article I, section 16, of the California Constitution." (*Id.* at p. 272.) A prosecutor violates that right by using peremptory challenges to strike prospective jurors who are "members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds," when the challenges are made "on the sole ground of group bias." (*Id.* at p. 276.) The United States Supreme Court has held that a prosecutor's discriminatory use of peremptory challenges violates a defendant's right to equal protection under the Fourteenth Amendment to the United States Constitution. (*Batson, supra,* 476 U.S. at p. 88.)

"There is a rebuttable presumption that a peremptory challenge is being exercised properly, and the burden is on the opposing party to demonstrate impermissible discrimination. [Citations.] To do so, a defendant must first 'make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." [Citation.] Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial [or gender] exclusion" by offering permissible race-neutral [or gender-neutral] justifications for the strikes. [Citations.] Third, "[i]f a race-neutral [or gender-neutral] explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has

---

[9] The California Supreme Court has "assumed" that Hispanic women constitute a separate cognizable group for *Wheeler*/*Batson* purposes. (*People v. Bonilla, supra,* 41 Cal.4th at p. 344, fn. 14.)

proved purposeful . . . discrimination." [Citation.]' (*Johnson v. California* [(2005) 545 U.S. 162,] 168, fn. omitted.)  The same three-step procedure applies to state constitutional claims.  (*People v. Bell* (2007) 40 Cal.4th 582, 596 [54 Cal.Rptr.3d 453, 151 P.3d 292].)" (*People v. Bonilla, supra,* 41 Cal.4th at p. 341.)

"In deciding whether a prima facie case was stated, we consider the entire record before the trial court [citation], but certain types of evidence may be especially relevant: '[T]he party may show that his opponent has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of his peremptories against the group.  He may also demonstrate that the jurors in question share only this one characteristic—their membership in the group—and that in all other respects they are as heterogeneous as the community as a whole.  Next, the showing may be supplemented when appropriate by such circumstances as the failure of his opponent to engage these same jurors in more than desultory voir dire, or indeed to ask them any questions at all.  Lastly, . . . the defendant need not be a member of the excluded group in order to complain of a violation of the representative cross-section rule; yet if he is, and especially if in addition his alleged victim is a member of the group to which the majority of the remaining jurors belong, these facts may also be called to the court's attention.' (*People v. Wheeler, supra,* 22 Cal.3d at pp. 280–281, fn. omitted.)" (*People v. Bonilla, supra,* 41 Cal.4th at p. 342.)

"Review of a trial court's denial of a *Wheeler/Batson* motion is deferential, examining only whether substantial evidence supports its conclusions.  (*People v. Bonilla, supra,* 41 Cal.4th at pp. 341-342.)  'We review a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges "'with great restraint.'" [Citation.]  We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses.  [Citation.]  So long as the trial court makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal.  [Citation.]'

(*People v. Burgener* (2003) 29 Cal.4th 833, 864 [129 Cal.Rptr.2d 747, 62 P.3d 1].) [Footnote omitted.]" (*People v. Lenix* (2008) 44 Cal.4th 602, 613-614.)

In fulfilling its obligation to make a sincere and reasoned effort to evaluate the prosecutor's explanation, "the trial court is not required to make specific or detailed comments for the record to justify every instance in which a prosecutor's race-neutral reason for exercising a peremptory challenge is being accepted by the court as genuine. This is particularly true where the prosecutor's race-neutral reason for exercising a peremptory challenge is based on the prospective juror's demeanor, or similar intangible factors, while in the courtroom." (*People v. Reynoso* (2003) 31 Cal.4th 903, 919.) "Inquiry by the trial court is not even required. (*Id.* at p. 920.) 'All that matters is that the prosecutor's reason for exercising the peremptory challenge is sincere and legitimate, legitimate in the sense of being nondiscriminatory.' (*Id.* at p. 924.) A reason that makes no sense is nonetheless 'sincere and legitimate' as long as it does not deny equal protection. (*Ibid.*)" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1100-1101, disapproved on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

   B.     *The Challenged Prospective Jurors*
        1.     Juror No. 4357

Juror No. 4357 lived in West Los Angeles. She was single, did not have any children, and worked as a schedule coordinator at USC. She had never served on a jury. Carranza's counsel asked the prospective jurors what came to mind when they thought about gangs. One of the prospective jurors said, "I don't really have an opinion on it. It's not my decision to be in a gang; so it's that person's choice." Counsel asked that prospective juror if she had read or heard much about gangs in newspapers or on TV. The prospective juror responded, "Well, gangs are everywhere, but I just choose not to be a part of it." Counsel then asked Juror No. 4357 for her thoughts on gangs. Apparently referring to the comments of the prior prospective juror, Juror No. 4357 said, "I think the same way she does."

### 2. Juror No. 2045

Juror No. 2045 lived in South Central Los Angeles. She was divorced, did not have any children, and worked as a therapeutic behavioral specialist with children and teenagers who were severely and emotionally disturbed. She had never served on a jury. In 1993, Juror No. 2045 was robbed by two men who were armed with a tire iron. She received a few scratches and bruises. The men were never caught. Her car was also broken into and its content taken. In 1997, her mother was robbed at a bus stop.

Juror No. 2045 grew up in South Central Los Angeles, an area where there were many gang members. She had many relatives and friends who were gang members, the majority of whom were then incarcerated. One of her friends was incarcerated for robbery, another for attempted murder. Juror No. 2045 had a cousin who was an Inglewood police officer, a friend who was a Los Angeles Police Department officer, and a friend who was a parole officer.

### 3. The Prospective Juror In Seat No. 9

The Juror No. 8917 lived in East Los Angeles. She was a widow, had two children, and worked as a babysitter. She had never served on a jury.

### C. *The* Wheeler/Batson *Motion*

When the prosecutor excused the prospective juror in seat number 9, Aguirre's counsel requested a sidebar conference at which he and Carranza's counsel made a *Wheeler*/*Batson* motion. Aguirre's counsel argued that the prosecutor had excused a series of Hispanic jurors. The trial court asked, "Did no one observe how unbelievably perplexed that last juror was and started to leave when I told her to take seat No. 9? When I excused another juror, she thought it was her turn to leave. She clearly didn't know what in God's name she was doing."

Carranza's counsel argued that the prospective juror in seat number 9 had not "expressed any opinion as to any sort of lack of fairness. She's a baby-sitter." The trial court responded, "No, she was totally confused, [counsel], and didn't know what was

14

going on." The prosecutor stated her reason for excusing the prospective juror, stating, "I'll simplify that. I'm not sure she speaks English at all. On top of everything else, she went the wrong way, that's why I'm excusing her." The trial court added, "I don't normally say anything, but it was so blatantly obviously [*sic*] she didn't have any clue what's going on. I don't know why a Wheeler motion was based as to her. You have the right to do so. I'm not blind, she clearly was confused."

The trial court inquired if defense counsel had any other bases for their motion. Carranza's counsel stated that two previously excused prospective jurors, Juror Nos. 4357 and 2045, also were female and Hispanic. Juror No. 4357, Carranza's counsel stated, "clearly expressed an opinion toward gangs." The prosecutor stated that Juror No. 2045 was the prospective juror who had "all the relatives in prison." The trial court asked if there was any further argument. Aguirre's counsel stated that he understood the trial court's "observations as to this witness," but that a racial pattern seemed to be developing to which he was objecting. Carranza's counsel had no further argument.

The trial court found that defendants had not made a prima facie showing that the prosecutor had exercised peremptory challenges for a discriminatory purpose. It found that there was a "completely ethnicity neutral basis" to excuse the prospective juror in seat number 9—it was clear to the court that the prospective juror had no idea what was going on. With respect to Juror No. 2045, the trial court stated that she had "numerous relatives who had been arrested and incarcerated and imprisoned."

The trial court gave the prosecutor the opportunity to make a record. The prosecutor noted her belief that all of the persons involved in the case—the defendants, victims, and police officers—were Hispanic. She stated that she excused Juror No. 4357 because of "how long it took her to answer, and her hesitancy." The prosecutor explained that her "only case that hung 11 to 1, it was a woman to [*sic*] simply could not answer the questions and her hesitancy who hung it . . . ." The prosecutor excused Juror No. 2045 because she was the prospective juror "who has all the relatives in prison." She excused the prospective juror in seat number 9 because she "was concerned about her

15

English, and became more concerned about her English and/or comprehension when she left after the court directed her to a different location."

The trial court restated its finding that defendant had not made a prima facie showing of discrimination. It further found that the prosecutor's reasons for excusing the prospective jurors were credible and not race or ethnicity based. The trial court properly found that defendants failed to make a prima facie showing that the prosecutor used peremptory challenges for a discriminatory purpose, and the prosecutor had race and gender neutral reasons for excusing the prospective jurors at issue.

"It is well settled that '[p]eremptory challenges based on counsel's personal observations are not improper.' [Citation.]" (*People v. Reynoso, supra,* 31 Cal.4th at p. 917.) "[N]othing in *Wheeler* disallows reliance on the prospective jurors' body language or manner of answering questions as a basis for rebutting a prima facie case . . . ." (*People v. Fuentes* (1991) 54 Cal.3d 707, 715.) The prosecutor believed that Juror No. 4357 took too long to answer questions and was hesitant. Those were proper, nondiscriminatory, bases for excluding Juror No. 4357. (*People v. Reynoso, supra,* 31 Cal.4th at p. 917; *People v. Fuentes, supra,* 54 Cal.3d at p. 715.)

The use of a peremptory challenge on the basis that a prospective juror has an incarcerated relative is race-neutral. (*People v. Roldan* (2005) 35 Cal.4th 646, 703, overruled on a different point in *People v. Doolin, supra,* 45 Cal.4th at p. 421, fn. 22; *People v. Cox* (2010) 187 Cal.App.4th 337, 360.) Juror No. 2045 had a relative who had been incarcerated in jail. Accordingly, the prosecutor excused Juror No. 2045 for a legitimate, nondiscriminatory, reason. (*People v. Roldan, supra,* 35 Cal.4th at p. 703; *People v. Cox, supra,* 187 Cal.App.4th at p. 360.)

That a prospective juror appears to be confused is a legitimate, nondiscriminatory, basis for exercising a peremptory challenge. (See *People v. Taylor* (2009) 47 Cal.4th 850, 893-894 [prospective juror's confusion in responding to written and oral questions gave the prosecutor a strong reason to doubt the prospective juror's ability to perform her duties as a juror]; *People v. Watson* (2008) 43 Cal.4th 652, 682 [substantial confusion about the penalty phase process was a proper basis to excuse a prospective juror].)

16

Insufficient command of the English language is a nondiscriminatory basis for excusing a prospective juror. (*People v. Lomax* (2010) 49 Cal.4th 530, 566.) The trial court expressed surprise when Aguirre's counsel's made a *Wheeler*/*Batson* motion with respect to the prospective juror in seat number 9. The trial court described the prospective juror as "unbelievably perplexed" when it told her to take seat number 9. In the trial court's view, the prospective juror did not know what she was doing and did not know what was taking place. The prosecutor relied on the prospective juror's apparent confusion and perceived inability to speak English in excusing her. The prosecutor properly excused the prospective juror in seat number 9. (*People v. Taylor, supra,* 47 Cal.4th at pp. 888-889; *People v. Watson, supra,* 43 Cal.4th at p. 682; *People v. Lomax, supra,* 49 Cal.4th at p. 566.)

## DISPOSITION

The judgments are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:


ARMSTRONG, Acting P. J.


KRIEGLER, J.


17