Filed 4/13/15  P. v. Thomas CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARLON J. THOMAS et al.,<br><br>    Defendants and Appellants. | B252678<br><br>(Los Angeles County<br>Super. Ct. No. TA123047) |

APPEAL from judgments of the Superior Court of Los Angeles County, Allen J. Webster, Jr., Judge.  Thomas's judgment is affirmed in part as modified, reversed in part, and remanded.  Thompson's judgment is affirmed as modified.

Cannon & Harris, Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant Marlon J. Thomas.

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant Tommy D. Thompson, Jr.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Jonathan J. Kline and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant and appellant Marlon Thomas of first degree felony murder (Pen. Code, § 187, subd. (a)[1]); willful, deliberate, and premeditated attempted murder (§§ 664, subd. (a)/187, subd. (a)); first degree burglary (§ 459); and first degree residential robbery (§ 211). As to Thomas's murder conviction, the jury found true the special circumstance allegations that Thomas committed the murder during the commission of a first degree residential robbery and first degree residential burglary (§ 190.2, subd. (a)(17)) and that he personally used and personally and intentionally discharged a firearm causing great bodily injury and death (§ 12022.53, subds. (b)-(d)). With respect to the attempted murder conviction, the jury found true the allegation that Thomas personally inflicted great bodily injury (§ 12022.7, subd. (a)) and personally used and personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subds. (b)-(d)). With respect to the burglary and robbery convictions, the jury found true the allegations that another person who was not an accomplice was present in the residence and Thomas personally used and personally and intentionally discharged a firearm causing great bodily injury and death. (§ 12022.53, subds. (b)-(d).) The trial court sentenced Thomas to life without the possibility of parole plus 50 years.

The jury convicted defendant and appellant Tommy Thompson, Jr. of first degree felony murder (§ 187, subd. (a)) and first degree burglary (§ 459). The jury acquitted Thompson of robbery. (§ 211.) As to Thompson's murder conviction, the jury found true the allegation that a principal used a firearm (§ 12022, subd. (a)(1)), but found not true the special circumstance allegations that Thompson committed the murder during the commission of a first degree residential robbery and first degree residential burglary (§ 190.2, subd. (a)(17)). As to the burglary conviction, the jury found true the allegations that another person who was not an accomplice was present in the residence and a principal used a firearm. (§ 12022, subd. (a)(1).) The trial court sentenced Thompson to 26 years to life.

---

[1] All statutory citations are to the Penal Code unless otherwise noted.

On appeal, Thomas contends that the jury's true findings on the section 12022.53, subdivisions (b) through (d) firearm allegations with respect to his burglary conviction must be reversed because burglary is not an offense to which section 12022.53 applies; his sentences for his burglary and robbery convictions should have been stayed under section 654; his stayed $280 parole revocation restitution fine must be reversed because his sentence does not include a parole period; and his abstract of judgment must be modified to reflect that he was sentenced to life with, not without, the possibility of parole for his attempted murder conviction and to correct the spelling of his middle name. We order the jury's true findings on the section 12022.53, subdivisions (b) through (d) firearm allegations as to Thomas's burglary conviction reduced to a lesser included violation of section 12022.5, subdivision (a) and remand the matter for resentencing; Thomas's sentences for his burglary and robbery convictions stayed under section 654 and his abstract of judgment modified accordingly; Thomas's $280 parole revocation restitution fine reversed and stricken from his abstract of judgment; Thomas's abstract of judgment modified to reflect that Thomas was sentenced to life with the possibility of parole for his attempted murder conviction; and the trial court to determine the correct spelling of Thomas's name on remand.

Thompson contends on appeal that there is insufficient evidence to support his murder and burglary convictions and, if there is sufficient evidence to support his burglary conviction, then the sentence for that conviction should have been stayed under section 654. Thompson joins Thomas's arguments to the extent that they benefit him. We affirm Thompson's murder and burglary convictions and order the sentence for his burglary conviction stayed under section 654 and his abstract of judgment modified accordingly.

## BACKGROUND

Terrance Scott was friends with Thompson and Thompson's mother Jaquita Curtis. At least as of October 2010, Curtis and Thomas were a couple. Roosevelt Scott, Terrance's brother,[2] knew Thompson, Thomas, and Curtis.

Terrance sold marijuana and always carried a large amount of money. In October 2010, Roosevelt saw Thompson at Terrance's apartment. On that occasion, there was some "weed smoking going on."

Between 9:00 and 10:00 on November 10, 2010, Terrance picked up Roosevelt from their parents' home. They went to a car wash to clean the engine in Terrance's car, and then to a body shop where they remained for a few hours. While at the body shop, Terrance spoke and texted on his phone. When they left the body shop, Terrance and Roosevelt went to Terrance's apartment.

About 3:40 to 3:50 p.m., Terrance told Roosevelt that he had received a phone call and Thompson was coming up. Terrance opened the door, stuck his head out, and left the door open. Shortly thereafter, Thompson entered the apartment. When Thompson entered, Roosevelt was standing in the kitchen and Terrance was standing "pretty much directly in front of the doorway." Thompson looked straight ahead at Terrance.

Roosevelt said to Thompson, "What's up brother man?" Thompson did not respond. Thompson turned around and ran out of the apartment. Terrance said, "Hey," and put his hands in the air. Roosevelt heard a gunshot that came from outside of the apartment, and Terrance dropped to the floor. Roosevelt was unsure if Thompson had run all the way out of the apartment when the shot was fired. Thompson did not make a "gesture" as if to cover himself when the shot went off, did not stop to say anything to Roosevelt or Terrance, and did not return. Roosevelt did not know who fired the gunshot.

Within seconds, Thomas entered the apartment and closed the door. Thomas had a gun in his hand and immediately ran to Terrance. Thomas bent over Terrance and

---

**2**    Because Terrance and Roosevelt Scott share a last name, we will refer to them by their first names for clarity.

4

asked, "Where's the money?" Terrance said, "Huh." Roosevelt heard a second gunshot. Terrance suffered a fatal gunshot wound to his head.

Thomas rose up and extended his hand with the gun. Roosevelt lunged and grabbed his phone from the counter, but Thomas took the phone and put his gun to the side of Roosevelt's head. Thomas asked Roosevelt, "Where is the money?" Roosevelt took a couple of steps towards the stove and did not say anything. Then, Roosevelt struck the hand in which Thomas was holding the gun, and they wrestled. Thomas pushed off Roosevelt and put the gun to his head. Thomas said, "Fuck you, you bull shit'in you gon' die." Thomas then shot Roosevelt in his left eyebrow. Roosevelt fell to the floor and "played dead."

Roosevelt heard kitchen cabinets being opened and closed. He then heard Thomas "yanking" on the doorknob. Roosevelt's legs were in front of the door, and Thomas was unable to open the door. Roosevelt heard Thomas break a window, and saw him crawl out of the window.

A Los Angeles County Sheriff's Department deputy recovered Terrance's cell phone from the floor next to his body. The cell phone contained text messages between "T"[3] (Terrance) and "Tommy" (Thompson) between 11:32 a.m. and 3:20 p.m. on November 10, 2010, concerning Thompson going to Terrance's apartment and when Terrance would be home. For example, at 3:18 p.m., Terrance sent Thompson a message stating, "At the pad now." At 3:20 p.m., Thompson sent Terrance a message stating, "Alright give me like 10min or 5mins Ima be leaven dis drive thru."

**DISCUSSION**

## I. Sufficiency of the Evidence Supporting Thompson's Convictions

Thompson contends that insufficient evidence supports his burglary conviction and, thus, his felony murder conviction because there is insufficient evidence to show that he was the "set up" man for the crimes—i.e., that he gained entry for Thomas into

---

[3] Terrance went by the nickname "T."

5

Terrance's apartment so that Thomas could rob Terrance.  Sufficient evidence supports Thompson's convictions.

### A.   *Standard of Review*

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 [82 Cal.Rptr.3d 323, 190 P.3d 664].)  We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781].)  In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].)" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.)

"Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom." (*People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064.) "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence.  [Citation.]'  [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358.)  In determining whether substantial evidence supports a conviction, "we do not reweigh the evidence, resolve conflicts in the evidence, draw inferences contrary to the verdict, or reevaluate the credibility of witnesses." (*People v. Little* (2004) 115 Cal.App.4th 766, 771, citing *People v. Jones* (1990) 51 Cal.3d 294, 314.)

### B.   *Application of Relevant Principles*

The parties to a crime are principals and accessories.  (§ 30.)  "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and

6

whether they directly commit the act constituting the offense, or aid and abet in its commission . . . are principals in any crime so committed." (§ 31.)

"A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164; *People v. Beeman* (1984) 35 Cal.3d 547, 561.) "An aider and abettor's derivative liability for a principal's criminal act has two distinct prongs: First, the aider and abettor is liable for the particular *crime* that to his knowledge his confederates are contemplating. Second, the aider and abettor is also liable for the natural and probable consequences *of any criminal act* he knowingly and intentionally aids and abets, in addition to the specific and particular crime he and his confederates originally contemplated." (*People v. Brigham* (1989) 216 Cal.App.3d 1039, 1052.)

"Mere presence at the scene of a crime which does not itself assist its commission or mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting." (*In re Michael T.* (1978) 84 Cal.App.3d 907, 911; *People v. Richardson* (2008) 43 Cal.4th 959, 1024.) "However, '[a]mong the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' [Citation.]" (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409.) "'Whether defendant aided and abetted the crime is a question of fact, and on appeal all conflicts in the evidence and reasonable inferences must be resolved in favor of the judgment.' [Citation.]" (*Ibid.*)

There is evidence that shows, and the prosecutor argued to the jury, that Thompson was not the shooter. Accordingly, Thompson's culpability, if any, was as an aider and abettor. Thompson contends that the evidence is insufficient to establish his culpability as an aider and abettor because the evidence does not show that he had an agreement or plan with Thomas to rob Terrance or that he even had any communication with Thomas. Evidence was adduced at trial from which a reasonable juror could infer

Thompson's involvement in the burglary and felony murder. That evidence shows that Thompson and Thomas knew each other—Thomas dated Thompson's mother. On the day of the shooting, Thompson exchanged a number of text messages with Terrance about arranging to meet at Terrance's apartment. When Thompson entered the apartment, he looked straight ahead at Terrance. When Roosevelt greeted Thompson, Thompson said nothing. Immediately after entering Terrance's apartment, and just before the first shot was fired, Thompson turned to leave the apartment despite having exchanged numerous texts with Terrance over several hours to arrange to meet with him. Thompson did not make an attempt to cover himself when the first shot was fired, suggesting that he was not surprised when a gun was fired in his direction from close range. He did not stop and say anything to Terrance or Roosevelt on his way out of the apartment or return to the apartment to aid Terrence or Roosevelt. Such evidence is sufficient for the jury to conclude that Thompson arranged for Thomas's entry into Terrance's apartment so that Thomas could rob Terrance and thus was an aider and abettor.

## II. The Jury's True Findings on Thomas's Section 12022.53, Subdivisions (b) Through (d) Firearm Allegations for His Burglary Conviction

Thomas contends that the jury's true findings on the section 12022.53, subdivisions (b) through (d) firearm allegations with respect to his burglary conviction must be reversed because burglary is not an offense to which section 12022.53 applies. Respondent properly concedes the contention, but argues that we may instead impose and stay a firearm allegation under section 12022.5, subdivision (a) because the allegations under section 12022.53 gave Thomas notice that his conduct could also violate section 12022.5.

Section 12022.53, subdivision (a) lists the felonies to which the provisions of subdivisions (b), (c), and (d) of section 12022.53 apply.[4] Burglary is not among the listed felonies. Accordingly, the jury's true finding on the section 12022.53, subdivision (b) through (d) allegations as to Thomas's burglary conviction were improper.

When an appellate court overturns a firearm enhancement that is not supported by sufficient evidence or that does not apply to the offense of which the defendant was convicted, it may nevertheless impose a lesser included firearm enhancement that is supported by substantial evidence and applies to the offense of conviction. (*People v. Fialho* (2014) 229 Cal.App.4th 1389, 1394-1397; *People v. Allen* (1985) 165 Cal.App.3d 616, 627; see *People v. Strickland* (1974) 11 Cal.3d 946, 959-961.) With respect to the commission of a felony listed in subdivision (a) of section 12022.53, subdivision (b) of that section applies to a person who "personally uses a firearm," subdivision (c) applies to a person who "personally and intentionally discharges a firearm," and subdivision (d) applies to a person who "personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death."[5] Section 12022.5, subdivision (a)[6]

---

**4**     Section 12022.53, subdivision (a) provides, "This section applies to the following felonies: [¶] (1) Section 187 (murder). [¶] (2) Section 203 or 205 (mayhem). [¶] (3) Section 207, 209, or 209.5 (kidnapping). [¶] (4) Section 211 (robbery). [¶] (5) Section 215 (carjacking). [¶] (6) Section 220 (assault with intent to commit a specified felony). [¶] (7) Subdivision (d) of Section 245 (assault with a firearm on a peace officer or firefighter). [¶] (8) Section 261 or 262 (rape). [¶] (9) Section 264.1 (rape or sexual penetration in concert). [¶] (10) Section 286 (sodomy). [¶] (11) Section 288 or 288.5 (lewd act on a child). [¶] (12) Section 288a (oral copulation). [¶] (13) Section 289 (sexual penetration). [¶] (14) Section 4500 (assault by a life prisoner). [¶] (15) Section 4501 (assault by a prisoner). [¶] (16) Section 4503 (holding a hostage by a prisoner). [¶] (17) Any felony punishable by death or imprisonment in the state prison for life. [¶] (18) Any attempt to commit a crime listed in this subdivision other than an assault."

**5**     Section 12022.53, subdivisions (b), (c), and (d) provide:
"(b) Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years. The firearm need not be operable or loaded for this enhancement to apply.

9

applies to a person "who personally uses a firearm in the commission of a felony." A person cannot commit conduct that violates section 12022.53, subdivisions (b) through (d) without also committing conduct that violates section 12022.5, subdivision (a). That is, a person cannot "personally use[] a firearm," "personally and intentionally discharge[] a firearm," or "personally and intentionally discharge[] a firearm and proximately cause[] great bodily injury . . . or death" in violation of subdivisions (b), (c), and (d), respectively, of section 12022.53 without also "personally using" a firearm in violation of subdivision (a) of section 12022.5. Accordingly, we order the jury's true findings on the section 12022.53, subdivisions (b) through (d) enhancements on Thomas's burglary conviction reduced to a lesser included violation of section 12022.5, subdivision (a), and remand the matter for resentencing on the lesser included enhancement. (*People v. Allen, supra,* 165 Cal.App.3d at p. 627.)

**III.  Section 654 Stay of The Burglary and Robbery Sentences and Related Firearm Enhancement**

Thomas contends that his concurrent sentences for his first degree burglary and robbery convictions should have been stayed under section 654 because those offenses

---

"(c)  Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), personally and intentionally discharges a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 20 years.

"(d)  Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 26100, personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life."

**6**     Section 12022.5, subdivision (a) provides, "Except as provided in subdivision (b) [applicable to the use of an assault weapon or machine gun], any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense."

were the underlying felonies for his first degree felony murder conviction. Thompson makes the same contention with respect to the concurrent sentence for his first degree burglary conviction and the accompanying enhancement for firearm use by a principal under section 12022, subdivision (a)(1). Respondent agrees, as do we.

The trial court instructed the jury that the underlying felonies for the prosecution's felony murder theory as to Thomas and Thompson were first degree residential burglary and/or first degree residential robbery. The jury convicted Thomas of first degree felony murder and, as relevant, first degree burglary and first degree residential robbery. The trial court sentenced Thomas to concurrent, four-year, middle term sentences for his burglary and robbery convictions.[7] The jury convicted Thompson of first degree felony murder and first degree residential burglary and found true the allegation that a principal used a firearm. The trial court sentenced Thompson to a consecutive, four-year, middle term sentence for his burglary conviction and a concurrent one-year term for the firearm enhancement.

When a defendant has been found guilty of first degree murder based on a felony-murder theory, section 654 requires that the punishment for the underlying felony be stayed. (*People v. Montes, supra,* 58 Cal.4th at p. 898; *People v. Boyd* (1990) 222 Cal.App.3d 541, 575-576.) Section 654 also requires that the punishment for any enhancement attached to the underlying felony be stayed. (*People v. Montes, supra,* 58 Cal.4th at p. 898; *People v. Calles, supra,* 209 Cal.App.4th at p. 1221.) Because Thomas's concurrent sentences for his burglary and robbery convictions were the underlying felonies for his first degree felony murder conviction, the trial court should have stayed imposition of sentence for those convictions under section 654. Likewise, because Thompson's burglary conviction was the underlying felony for his first degree felony murder conviction, the trial court should have stayed imposition of sentence for

---

[7] The trial court properly stayed, under section 654, the section 12022.53, subdivisions (b) through (d) firearm enhancements on Thomas's burglary and robbery convictions. (*People v. Montes* (2014) 58 Cal.4th 809, 898; *People v. Calles* (2012) 209 Cal.App.4th 1200, 1221 ["When the base term of a sentence is stayed under section 654, the attendant enhancements must also be stayed"].)

that conviction and for the attached section 12022, subdivision (a)(1) enhancement for use of a firearm by a principal. We order Thomas's sentences for his burglary and robbery convictions and Thompson's sentences for his burglary and section 12022, subdivision (a)(1) firearm enhancement stayed under section 654. We further order that Thomas's and Thompson's respective abstracts of judgment be modified accordingly.

## IV. Thomas's Parole Revocation Fine

Thomas argues that his stayed $280 parole revocation restitution fine under section 1202.45 must be reversed because his sentence does not include a parole period. Respondent rightly agrees.

When a defendant's sentence does not allow for parole, an additional parole revocation restitution fine under section 1202.45 is improper. (*People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1185.) A parole revocation restitution fine under section 1202.45 is mandatory, however, in every case in which there is at least one count with a determinate sentence, even when the defendant is sentenced to death on other counts. (*People v. Brasure* (2008) 42 Cal.4th 1037, 1075.) Although a parole revocation restitution fine must be imposed in cases in which there is one count with a determinate sentence, such a fine may not be imposed when the determinate sentence has been stayed under section 654. (*People v. Pearson* (1986) 42 Cal.3d 351, 361 ["section 654 prohibits the use of a conviction for any punitive purpose if the sentence on that conviction is stayed"]; *People v. Cruz* (2012) 207 Cal.App.4th 664, 672-673, fn. 8 [at least for ex post facto purposes, "imposition of a parole revocation restitution fine pursuant to section 1202.45 is viewed as punitive"]; see *People v. Hannah* (1999) 73 Cal.App.4th 270, 274-275 [a trial court may not impose a section 1202.45 fine if it suspended the state prison sentence and placed the defendant on probation because the defendant was "presently not subject to a parole period and will not be absent a revocation of her probation and commitment to prison"]; see also *People v. Hanson* (2000) 23 Cal.4th 355, 361-362 [the restitution fine under section 1202.4, subdivision (b) is a criminal penalty or punishment]; *People v. Le* (2006) 136 Cal.App.4th 925, 933 [section 654's ban on multiple

12

punishments is violated if the trial court considers a sentence that should have been stayed pursuant to section 654 in calculating the restitution fine under the formula provided by section 1202.4, subdivision (b)(2)].)

In this case, the trial court sentenced Thomas to a combination of life and determinate terms. The trial court sentenced Thomas to life without the possibility of parole for his felony murder conviction, to life with the possibility of parole for his attempted murder conviction, and two concurrent four-year terms for his burglary and robbery convictions. The trial court imposed consecutive 25-years-to-life terms on Thomas's murder and attempted murder convictions for his section 12022.53 firearm enhancements.

Thomas's sentence, as imposed, included determinate terms for his burglary and robbery convictions. If those determinate terms had been properly imposed—i.e., if neither sentence had been subject to a section 654 stay, then the trial court properly could have imposed a section 1202.45 parole revocation restitution fine under *People v. Brasure, supra,* 42 Cal.4th at page 1075. Because, however, we held above that Thomas's sentences for his burglary and robbery convictions should have been stayed under section 654, Thomas's sentence did not provide for a parole period and a section 1202.45 parole revocation restitution fine was improper. (*People v. Oganesyan, supra,* 70 Cal.App.4th at p. 1185; *People v. Pearson, supra,* 42 Cal.3d at p. 361; *People v. Cruz, supra,* 207 Cal.App.4th at pp. 672-673, fn. 8; see *People v. Hannah, supra,* 73 Cal.App.4th at pp. 274-275; see also *People v. Hanson, supra,* 23 Cal.4th at pp. 361-362; *People v. Le, supra,* 136 Cal.App.4th at p. 933.) Accordingly, the stayed $280 section 1202.45 parole revocation restitution fine was not properly imposed and is ordered stricken from the Thomas's abstract of judgment.

## V.     Thomas's Abstract of Judgment

Thomas argues that his abstract of judgment must be modified to reflect that he was sentenced to life with, not without, the possibility of parole for his attempted murder conviction and to correct the spelling of his middle name. Respondent agrees that the

13

abstract of judgment must be modified to reflect a term of life with the possibility of parole for Thomas's attempted murder conviction, but argues correctly that the record is insufficiently clear to determine the correct spelling of Thomas's middle name. Respondent argues that the trial court should determine the correct spelling of Thomas's middle name when it decides other issues on remand.

The sentence for attempted willful, deliberate, and premeditated murder is life with the possibility of parole. (§ 664, subd. (a).) In its oral pronouncement of sentence, the trial court correctly sentenced Thomas to life with the possibility of parole for his attempted murder conviction. Thomas's abstract of judgment, however, erroneously reflects a sentence of life without the possibility of parole for Thomas's attempted murder conviction. We order the abstract of judgment modified to correct this apparent clerical error. (*People v. Mitchell* (2001) 26 Cal.4th 181, 186-187.)

Thomas's abstract of judgment states Thomas's middle name as "Jerrono." Thomas contends that his middle name is "Jerrone." He states that he was booked and charged in the information under the middle name "Jerrone," and that he stated that "Jerrone" was his true middle name at his arraignment.

Respondent argues that Thomas has not demonstrated that the abstract of judgment incorrectly spells Thomas's name. As respondent correctly states, the probation reports lists Thomas's middle name as "Jerrono" and the probation report lists the following aliases, among others, that Thomas has used: "Marlon *Jarron* Thomas," "Marlon *Jerome* Thomas," "Marlon *Jerrome* Thomas," "Marlon *Jerron* Thomas," "Marlon *Jeron* Thomas," and "Marlon *Jerrone* Thomas." We agree with respondent that the true spelling of Thomas's middle name cannot be determined from the record on appeal. The trial court is to determine the true spelling of Thomas's middle name on remand.

## DISPOSITION

The jury's true findings on the section 12022.53, subdivisions (b) through (d) firearm allegations as to Thomas's burglary conviction are reduced to a lesser included violation of section 12022.5, subdivision (a), and the matter is remanded for resentencing. Thomas's sentences for his burglary and robbery convictions are stayed under section 654 and his abstract of judgment is ordered modified accordingly. Thomas's abstract of judgment is further ordered modified to strike the $280 parole revocation restitution fine and to reflect that Thomas was sentenced to life with the possibility of parole for his attempted murder conviction. In connection with the remand for resentencing on the section 12022.5, subdivision (a) true finding, the trial court is to determine the correct spelling of Thomas's name. Thomas's judgment is otherwise affirmed.

Thompson's murder and burglary convictions are affirmed. The sentence for Thompson's burglary conviction is stayed under section 654, and his abstract of judgment is ordered modified accordingly.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

MOSK, J.

We concur:

TURNER, P. J.

GOODMAN, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15