[No. C055469. Third Dist. June 9, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
DEL JAY UGALINO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts IA, IB, IC.1 and II of the Discussion.

**COUNSEL**

Donald Masuda and Kenny N. Giffard for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Paul E. O'Connor, Alison Elle Aleman and Ivan P. Marrs, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

DAVIS, J.[*]—A jury found defendant Del Jay Ugalino guilty of the following crimes: (1) first degree residential burglary (Pen. Code, § 459); (2) attempted robbery of Joshua Johnson (Pen. Code, §§ 664, 211); (3) attempted robbery of Jessie Rider (Pen. Code, §§ 664, 211); (4) possession of a controlled substance for sale (Health & Saf. Code, § 11378); (5) possession of ammunition by a felon (Pen. Code, § 12316, subd. (b)(1)); (6) robbery of Bendon Lee (Pen. Code, § 211); (7) battery of Charles Maroosis (Pen. Code, § 242); and (8) making a criminal threat to Mickey Lathum (Pen. Code, § 422). The jury also found true the allegation that defendant personally used a handgun during the commission of the crimes set forth in (1) to (3), above. Defendant was sentenced to an aggregate term of 14 years six months in state prison. He appeals his conviction, claiming prosecutorial misconduct, ineffectiveness of counsel, and insufficiency of the evidence. We will reverse defendant's conviction for attempted robbery of Jessie Rider and otherwise affirm the conviction.

### I

### *Facts Relating to August 28, 2005, Incident*

In August 2005, Joshua Johnson was living in a two-bedroom apartment with his girlfriend, Denise Galindo, their infant daughter, and two roommates: Jessie Rider and Devon McDermott. For income, Johnson sold marijuana from the apartment.

On August 28, 2005, defendant called Johnson on Johnson's cell phone, telling Johnson he wanted to buy three ounces of marijuana. Having sold to defendant 10 to 15 times before, Johnson told him to come over. So, driving a pickup truck, Aorn Saechow drove defendant and a third man to Johnson's apartment, where Johnson met them at the curb. Defendant and the third man then followed Johnson to his apartment.

When the three men got to Johnson's apartment, Rider was in the front room looking through CD's (compact discs), Galindo was on the front porch, and McDermott was sleeping in one of the bedrooms. Once inside the apartment, defendant began counting out his money and Johnson went to his bedroom to get the marijuana out of a locked safe.

Johnson went into the kitchen area with the marijuana and defendant asked to use the restroom. Defendant walked down the hall toward the restroom and

---

[*] Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

then turned around, aimed a gun at Johnson, and said, "you're getting jacked." The man who came with defendant had his own gun and he pointed it at Rider, telling Rider to lie facedown on the ground.

Johnson initially "froze" but quickly grabbed the marijuana and stuffed it in his underwear, covering it with his shirt. Defendant then turned to his cohort and said, "give me your nine," and started walking toward Johnson. While defendant was looking the other way, Johnson ran out of the apartment, down the stairs, out to the parking lot, and past the truck in which defendant had arrived.

Approximately 30 seconds later, defendant and his cohort ran out of the apartment, down the stairs, and out to the parking lot, where they jumped into the waiting truck. As the truck pulled away, it hit a pole; the bumper fell off and was left behind, with the license plate attached. The police were called and shortly thereafter Galindo and Johnson identified defendant as the man who had attempted to rob them.[1]

Defendant was arrested and a search of defendant's person revealed a .380-caliber round and a nine-millimeter round of ammunition in defendant's left pocket. Both cartridges bore magazine marks indicating they had been loaded into a handgun. The search also revealed 20 Ecstasy pills and a cell phone in defendant's right pocket.

Defendant admitted stealing from Johnson, but told the police they "couldn't arrest him for ripping off a drug dealer." He also claimed the Ecstasy was for personal use and not for sale. Defendant was subsequently charged with one count of first degree residential burglary (Pen. Code, § 459—count one), two counts of attempted robbery (Johnson and Rider, respectively; Pen. Code, §§ 664, 211—counts two & three), possession of a controlled substance (Health & Saf. Code, § 11378—count five), and being a felon in possession of ammunition (Pen. Code, § 12316, subd. (b)(1)—count six). It was further alleged that defendant used a handgun in the commission of counts one through three.

A jury found defendant guilty on counts one through three, five, and six. The jury also found true the allegation that defendant had used a handgun during the commission of counts one through three. Defendant appeals, arguing prosecutorial misconduct, ineffective assistance of counsel, and insufficiency of the evidence. We find only one of defendant's claims has merit.

---

[1] The roommates initially lied to the police, telling them defendant simply kicked in the front door and started waving a gun around, leaving out the fact that Johnson was selling drugs from the apartment. They later amended their story and explained that defendant was there to buy drugs from Johnson. Johnson was given immunity for his testimony.

*Discussion Relating to August 28, 2005, Incident*

A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C. *Insufficient Evidence*

Defendant further contends there was insufficient evidence to convict him of possessing ammunition and attempting to rob Jessie Rider.

On appeal, we "must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68], citing *People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom. (*In re Michael D.* (2002) 100 Cal.App.4th 115, 126 [121 Cal.Rptr.2d 909].)

 1. *Possession of Ammunition**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

 2. *Attempted Robbery of Jessie Rider*

Defendant contends he cannot be convicted of attempting to rob Rider because the marijuana he was trying to steal belonged to Johnson. We agree.

█ "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) California follows "the traditional approach that limits victims of robbery to those persons in either actual or constructive possession of the property taken." (*People v. Nguyen* (2000) 24 Cal.4th 756, 764 [102 Cal.Rptr.2d 548, 14 P.3d 221].) " 'Robbery is an offense against the person . . . .' " (*People v. Miller* (1977) 18 Cal.3d 873, 880 [135 Cal.Rptr. 654, 558 P.2d 552].) Accordingly, a victim can be any person who shares "some type of 'special relationship' with the owner of the property sufficient to demonstrate that the victim had authority or responsibility to protect the stolen property on behalf of the

---

*See footnote, *ante*, page 1060.

owner." (*People v. Scott* (2009) 45 Cal.4th 743, 753 [89 Cal.Rptr.3d 213, 200 P.3d 837].) Persons with just such a special relationship include business employees and parents living with their adult children. (*Scott, supra,* 45 Cal.4th at pp. 752, 753–754; see *People v. Jones* (2000) 82 Cal.App.4th 485, 491 [98 Cal.Rptr.2d 329].)

In *People v. Gordon* (1982) 136 Cal.App.3d 519 [186 Cal.Rptr. 373], the defendants entered a residence by ruse, threatened a couple with a firearm, and took drugs and money belonging to the couple's absent adult son. (*Id.* at pp. 523–524.) The appellate court noted neither parent physically possessed the items taken nor did either know about the marijuana or money, and the only evidence to support a finding of possession was the couple's ownership and residence in the home where the crime occurred. (*Id.* at p. 529.) The court upheld the jury's determination that the parents were robbery victims who possessed their son's items for purposes of the robbery statute. (*Ibid.*) The court noted various individuals have been designated as victims in a robbery, such as a purchasing agent in charge of payroll, store clerks, barmaids, janitors in sole occupation of premises, watchmen, and gas station attendants. (*Ibid.*) "Clearly, if those individuals . . . were responsible for the protection and preservation of the property entrusted to them, parents have at least the same responsibility to protect goods belonging to their son who resides with them in their home." (*Ibid.*)

The evidence at trial established defendant attempted to steal marijuana from Johnson, saying, "you're getting jacked." "Give [me] the weed." It was undisputed that Rider did not have actual possession of the marijuana, and Johnson stored the marijuana locked in a safe in his bedroom. There was no evidence Rider, who had been living with Johnson for only three to four months, had access to the safe. In fact, Rider did not even have a key to the apartment, most of the time coming and going only when someone else was home.

Unlike the victims in *Gordon,* there is no parent-child relationship between Johnson and Rider, nor was Rider an employee of Johnson's. Rider and Johnson were simply roommates. Thus, Rider had no obligation to protect Johnson's belongings. Furthermore, at the time of the robbery, Johnson was present to protect his own belongings and there was no evidence he expected Rider to assist him in that regard.

Lacking any evidence that Rider owned, had access to, control over, or an obligation to protect the marijuana defendant attempted to steal, defendant's conviction for attempted robbery of Jessie Rider cannot be sustained and we reverse the conviction.

## *II**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

Defendant's conviction for the attempted robbery of Jessie Rider (count three of the information) is reversed. The judgment is otherwise affirmed and the matter is remanded for the limited purpose of recalculating defendant's sentence in light of this court's decision to reverse the conviction on count three. After resentencing, the trial court is directed to send a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

Sims, Acting P. J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 30, 2009, S174810.

---

\*See footnote, *ante*, page 1060.