Filed 3/6/14  P. v. Garibay CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B245741 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA047912) |
| v. | |
| JOSE GARIBAY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa M. Chung, Judge.  Affirmed.

Law Offices of Fred Browne & Associates, Fred Browne for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant and appellant Jose Garibay of three counts of attempted willful, deliberate, and premeditated murder (Pen. Code, §§ 664, subd. (a) & 187[1]) and three counts of shooting from a motor vehicle (former §12034, subd. (c), now § 26100, subd. (c)). The jury found true the allegations that the attempted murders were committed for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members (the gang enhancement allegations) within the meaning of section 186.22, subdivisions (b)(1)(C) and (b)(5), and that in committing those offenses, a principal personally and intentionally discharged a firearm which proximately caused great bodily injury (§ 12022.53, subds. (d) & (e)(1)). The jury also found true the gang enhancement allegations with respect to the shooting from a motor vehicle offenses within the meaning of section 186.22, subdivisions (b)(1)(B) and (b)(1)(C). On appeal, defendant contends that insufficient evidence supports the gang enhancement allegations and that he was deprived of his right to make an effective motion for new trial. We affirm.

## BACKGROUND[2]

Defendant was a Midtown Criminals gang member. On October 24, 2009, defendant drove by a residence at 1259 Boyden Avenue in Lancaster. Two Midtown Criminals gang members and a female were in the car with defendant. Westside Playboys gang members Adam Hernandez, Cesar Ramos, and David Lomeli were in front of the residence. As he drove by the residence, defendant fired several gunshots. Ramos was struck in the chest by a bullet.

---

[1] All statutory citations are to the Penal Code unless otherwise noted.

[2] Because defendant does not contend that his attempted murder and shooting from a moving vehicle convictions are not supported by sufficient evidence, we provide a brief background of those offenses and omit facts in connection to those offenses except as they are relevant to defendant's challenge to the sufficiency of evidence supporting the gang enhancement allegations.

Los Angeles County Sheriff's Department Detective Robert Gillis interviewed Ramos. Ramos said he had been walking by a friend's house when a car carrying four male Hispanics drove by. One of the car's occupants "threw an 'M' hand sign" at him. Ramos "threw a 'P' up," the symbol for Playboys. The car's driver started shooting at him. Ramos heard the word "Criminals" as the shooting was ending.

Detective Gillis also interviewed Lomeli. Lomeli told Detective Gillis that he lived at 1259 Boyden in October 2009. According to Lomeli, Hernandez and his girlfriend, Patty, had been in a "heated argument." Patty and an unknown group of male Hispanics arrived at "the location" in a large silver sedan. Lomeli told the detective that the car returned five minutes later, and the driver pointed a handgun at Lomeli as Lomeli turned to run into the house. Lomeli heard the word "Westside" as shots were being fired and the word "Criminals" when the firing stopped.

When Detective Gillis spoke with Hernandez, Hernandez asked the detective if he wanted to know "who did it." Hernandez then formed the letters "MTC" with his hands. Detective Gillis testified that the letters "MTC" are a common sign or symbol of the Midtown Criminals gang. Hernandez did not provide the shooter's name.

Three weeks after the shooting, Sheriff's Department deputies conducted a "protective sweep" of defendant's residence in connection with another crime investigation. During that sweep, Detective Gillis found a .22-caliber revolver under the pillow on defendant's bed. The parties stipulated that the .22 caliber revolver recovered from defendant's bedroom was test-fired and determined to have fired a bullet that was recovered from Ramos's chest.

At some point, defendant was apprehended. In an interview with Detective Gillis, defendant admitted that he was the shooter. Defendant said that he used a .22-caliber gun, and that he fired two to four shots. Defendant said that he had been in a fight, apparently with Hernandez, and that Hernandez slapped defendant's mother when she tried to break up the fight. On the day of the shooting, "Patty" flagged down defendant and said that "her man" had hit her. Defendant said that when he fired the gun he was angry because Hernandez had slapped his mother; he "didn't want to shoot them."

3

Defendant said that two Midtown Criminals gang members were with him in the car. One of the gang members yelled "MTC," and the other threw up an "M."

Detective Gillis testified that respect is everything in a gang. If a gang member does not have the respect of his fellow gang members or from rival gang members, he and his gang could be perceived of as weak. A gang member who identifies his gang by name is issuing a challenge. If a gang member issues a challenge to a rival gang member, violence will follow. The rival gang member will respond by stating his gang's name and using a weapon if armed. If a gang member were having a "personal beef" with a rival gang member and the rival gang member slapped the first gang member's mother when she tried to intervene, such an act would be seen as disrespectful within the context of gang life. Although such disrespect might draw an immediate response, the offended gang member might wait for a more advantageous opportunity to retaliate.

Los Angeles County Sheriff's Department Sergeant Richard Cartmill testified as an expert on the Midtown Criminals gang. The sergeant was not aware of any hostilities between the Midtown Criminals and Playboys gangs in 2009. The prosecutor gave Sergeant Cartmill a set of hypothetical facts based on the evidence in this case. Based on those facts, Sergeant Cartmill opined that the shooting was committed for the benefit of and in association with the Midtown Criminals gang. The sergeant explained that gang members commit crimes together because there is strength in numbers; each member of the group can assume a different role such as lookout, driver, or shooter; and they can split up when the police arrive making apprehension more difficult. The crime also would benefit the gang as a show of dominance. In the hypothetical, a member of the group "threw out" the gang's name either as a challenge or in response to a challenge. If gang members fail to respond to a challenge, the failure shows weakness and invites attacks from other gangs. Sergeant Cartmill investigated a number of crimes in which a gang member enlisted fellow gang members to respond when the gang member's family member was assaulted, insulted, or otherwise targeted. A gang member would view an attack on a family member as an affront to the gang member and thus an affront to the gang.

4

## DISCUSSION

## I. Sufficient Evidence Supports the Gang Enhancement Allegations

Defendant contends that insufficient evidence supports the gang enhancement allegations under section 186.22, subdivision (b)(1) because "[t]here was no evidence other than the gang expert's testimony that the shooting was for the benefit of the gang." Sufficient evidence supports the allegations.

### A. *Standard of Review*

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Avila* (2009) 46 Cal.4th 680, 701.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence. [Citation.]" (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom." (*People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064.) "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]' [Citation.] . . . '[I]t is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]'" (*People v. Zamudio, supra,* 43 Cal.4th at pp. 357-358.) We review a claim of insufficient evidence to support a gang enhancement finding under the same standard of review. (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 321-322.)

*B.      Application of Relevant Principles*

"'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the Penal Code section 186.22, subdivision (b)(1), gang enhancement. [Citation.]" (*People v. Vang* (2011) 52 Cal.4th 1038, 1048; *People v. Gardeley* (1996) 14 Cal.4th 605, 619.) Defendant acknowledges that the California Supreme Court has held that a gang expert's testimony is sufficient evidence to support a gang enhancement finding, but argues that "Sergeant Cartmill's opinion that the shooting was committed 'for the benefit of' the gang was nothing but a stock answer to a stock question asked by the prosecution in it hypothetical, given without adequate supporting evidence."

The evidence showed that defendant, a member of the Midtown Criminals gang, drove to the site of the shooting with two fellow Midtown Criminals gang members. Once there, defendant's gang cohorts either displayed gang signs or symbols or shouted their gang's name as defendant shot at his victims. Detective Cartmill explained that the shooting would benefit the Midtown Criminals gang by showing its dominance. Moreover, even if defendant shot at Hernandez because Hernandez allegedly slapped defendant's mother, Detective Cartmill explained that gang members view an attack on their family members as ultimately an attack on the gang itself. Detective Cartmill's expert testimony was substantial evidence from which a reasonable juror could have found beyond a reasonable doubt that defendant's offenses were committed for the benefit of and in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members. (*People v. Avila, supra,* 46 Cal.4th at p. 701; *People v. Vang, supra,* 52 Cal.4th at p. 1048; *People v. Gardeley, supra,* 14 Cal.4th at p. 619.)

## II.     The Trial Court Did Not Abuse Its Discretion in Denying Defendant's Request to Continue the Sentencing Hearing

Defendant contends that the trial court abused its discretion when it denied his request to continue the sentencing hearing to allow him more time to consider whether to

6

file a motion for new trial based on ineffective assistance of counsel. The trial court did not err.

### A. Background

The jury convicted defendant on October 10, 2012. The trial court set defendant's sentencing hearing for November 30, 2012. At sentencing, defense counsel asked for a continuance so that defendant's family members could submit letters of support. Counsel stated that she had had problems visiting defendant and her "schedule just didn't allow for a full motion to be prepared by today's date."

Defense counsel also stated that she had spoken with defendant's father and had raised "the issue of doing a motion for a new trial based on some grounds that would have to do with issues that were brought up in the trial. That would be a motion I could not do because it has to do with attorney—things I did during trial in making a determination of what witnesses and evidence to call. [¶] My understanding in talking to Mr. Garibay is right now he is not seeking to do that. I am not even sure the court would grant that if he were. But he is not seeking to do that. I had hoped to get him some more time to just think about whether he really wanted to do that or not. However, at this point, I don't think he wants to formally do that. I just was hoping the court would give him some more time to review that option and if it's a valid option. And I submit on that."

The trial court denied defendant's request for a continuance, finding that the request was not supported by good cause. As to additional letters of support, the trial court accepted defense counsel's representation that there was family support for defendant. It stated that it had observed that defendant had strong family support from his parents who attended "pretty much . . . every court proceeding" and would take such support into consideration in sentencing defendant. The trial court did not address defense counsel's request that defendant be granted a continuance to consider whether to file a new trial motion based on ineffective assistance of counsel.

7

*B.     Standard of Review*

"The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked.  [Citation.]"  (*People v. Beames* (2007) 40 Cal.4th 907, 920.)  A trial court abuses its discretion "only when the court exceeds the bounds of reason, all circumstances being considered.  [Citations.]"  (*Ibid.*)

*C.     Application of Relevant Principles*

A motion for a continuance in a criminal proceeding under section 1050 "shall be granted only upon a showing of good cause."  (§ 1050, subd. (e).)  "To continue any hearing in a criminal proceeding, including the trial, (1) a written notice shall be filed and served on all parties to the proceeding at least two court days before the hearing sought to be continued, together with affidavits or declarations detailing specific facts showing that a continuance is necessary and (2) within two court days of learning that he or she has a conflict in the scheduling of any court hearing, including a trial, an attorney shall notify the calendar clerk of each court involved, in writing, indicating which hearing was set first."  (§ 1050, subd. (b).)

A party may move for a continuance under section 1050 without complying with the requirements of subdivision (b) by showing good cause for failing to comply with those requirements.  (§ 1050, subd. (c).)  If the moving party fails to comply with the requirements in subdivision (b), the trial court must hold a hearing to determine whether good cause exists for the failure to comply with those requirements.  (§ 1050, subd. (d).)  If after such a hearing the trial court finds that the moving party did not show good cause for failing to give notice under subdivision (b), the trial court must deny the motion for a continuance.  (§ 1050, subd. (d).)  That is, the trial court must deny the motion to continue as a procedural matter, without addressing the merits of the motion.

Defendant concedes that he did not file a motion for a continuance that complied with the requirements in section 1050, subdivision (b).  The trial court did not hold a hearing, as required by subdivision (d), to determine if defendant could show good cause

8

for his failure to comply with subdivision (b). Instead, the trial court bypassed that hearing and proceeded directly to a determination of the merits of defendant's motion. Inexplicably, defendant appears to contend that he was prejudiced by the trial court's failure to hold a hearing to determine whether there was good cause for his failure to comply with subdivision (b).

There were two possible outcomes of a hearing under section 1050, subdivision (d), one favorable to defendant and one not favorable to defendant. First, the trial court could have found good cause for non-compliance with subdivision (b) and addressed the merits of defendant's motion. Second, the trial court could have found that defendant did not show good cause for failing to comply with subdivision (b), which would have required it to deny defendant's motion without considering the merits. When the trial court failed to hold a hearing under subdivision (d) and instead directly addressed the merits of defendant's motion for a continuance, defendant obtained the only favorable outcome of such a hearing if it had been held—a determination of the merits of his motion for a continuance. Accordingly, defendant suffered no prejudice.

Defendant also complains that the trial court never inquired about or addressed his request for a continuance to "pursue a motion for new trial on ineffective assistance." Neither defendant nor defense counsel stated that defendant intended to file a new trial motion. Defense counsel stated that she discussed with defendant's father a motion for new trial based on ineffective assistance of counsel, but that defendant did not at that time seek to file such a motion. Defense counsel then stated that she hoped the court would give defendant additional time to consider whether to file a new trial motion. The trial court reasonably could have found, based on defense counsel's statements, that defendant did not intend to file a motion for new trial. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a continuance without addressing the new trial/ineffective assistance of counsel issue. (*People v. Beames, supra,* 40 Cal.4th at p. 920.)

9

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, Acting P. J.


We concur:


KRIEGLER, J.


MINK, J.*

---

*     Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.