Filed 9/24/15  P. v. Ramirez CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JESSIE R. RAMIREZ,<br><br>　　　　Defendant and Appellant. | B258759<br><br>(Los Angeles County Super. Ct.<br>　Nos. BA332280 & BA400286)<br><br><br>**ORDER MODIFYING OPINION<br>　[NO CHANGE IN JUDGMENT]** |

It is ordered that the opinion filed herein on September 9, 2015, be modified in the following particular:

In the caption on the first page, a Los Angeles County Superior Court case number should be added to read:  Los Angeles County Super. Ct. Nos. BA332280 & BA400286.

There is no change in the judgment.

_____

TURNER, P. J.                                                        KRIEGLER, J.

Filed 9/9/15  P. v. Ramirez CA2/5 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JESSIE R. RAMIREZ,<br><br>        Defendant and Appellant. | B258759<br><br>(Los Angeles County Super. Ct.<br> No. BA332280) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert J. Perry, Judge.  Affirmed as modified.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, and Thomas C. Hsieh, Deputy Attorney General, for Plaintiff and Respondent.

_____

The jury convicted defendant and appellant Jessie R. Ramirez in count 2 of attempted murder. (Pen. Code, §§ 664/187, subd. (a).)[1] The jury found true the allegation that the attempted murder was willful, deliberate and premeditated, and that defendant personally used a deadly and dangerous weapon, a shank, in the commission of the offense. (§ 12022, subd. (b)(1).) The jury also convicted defendant in count 3 of assault on a peace officer (§ 245, subd. (c)), and found that defendant personally used a deadly and dangerous weapon, a shank, in the commission of the offense (§§ 667 & 1192.7).[2] As to both counts, the jury found true that defendant committed the offenses for the benefit of, at the direction of, and in association with a criminal street gang. (§ 186.22, subd. (b).) In a bifurcated proceeding, the trial court found defendant had suffered two prior convictions under the three strikes law (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)), and two prior serious or violent felony convictions (§ 667, subd. (a)(1)).

Defendant was sentenced to a total of 61 years to life in state prison. In count 2, the court imposed a sentence of 25 years to life, plus two five-year enhancements pursuant to section 667, subdivision (a)(1), and a one-year enhancement pursuant to section 12022, subdivision (b)(1). In count 3, the court imposed a sentence of 25 years to life.[3] Various fines and fees were imposed, including a $300 restitution fine (§ 1202.4, subd. (b)) and a stayed $300 parole revocation fine (§ 1202.45).

Defendant contends the trial court violated his due process rights by failing to remove two jurors and that there is insufficient evidence to support his conviction in count 3 of assault on a peace officer with a deadly weapon. Defendant further contends

[1] All statutory references are to the Penal Code, unless otherwise indicated.

[2] Defendant was found not guilty in count 1 of murder. (§ 187, subd. (a).)

[3] The prosecutor requested that the trial court not impose the one-year enhancement in count 3 pursuant to sections 667 and 1192.7, because he "didn't charge it that way. And second of all, it's subsumed by the offense." The court agreed.

2

the restitution fine and parole revocation fine must be amended to reflect the minimum amount as intended by the trial court. We conclude the trial court acted within its discretion in maintaining the two jurors on the trial and substantial evidence supports the assault on a peace officer conviction. We agree, and the Attorney General concedes, that the restitution fine and parole revocation fine must be modified to reflect a minimum restitution fine pursuant to sections 1202.4 and 1202.45 in accordance with the trial court's express intent. As modified, the judgment is affirmed.

## STATEMENT OF FACTS[4]

On June 17, 2013, Deputy Erik Felix was working at Los Angeles County Men's Central Jail at the 1700 Module. The inmates housed in that module were placed in single-inmate cells. Deputy Felix was escorting inmate Cleamon Johnson from Cell 15 to the shower in Cell 1. Defendant was housed in Cell 13 and inmate Jose Renteria was in Cell 12. As Deputy Felix walked by Cell 13, defendant thrust a makeshift spear tipped with a razor blade at inmate Johnson. Defendant thrust his spear more than five times. Inmate Renteria also repeatedly thrust another makeshift spear tipped with a razor from his cell. Neither of the spears struck Deputy Felix or inmate Johnson, but they did come within 10 inches of Deputy Felix near his abdomen and head. The spears came within a foot of inmate Johnson's shoulder and head. Deputy Felix immediately grabbed inmate Johnson, pushed past the cells, and put him into Cell 1. Deputy Felix testified that if he had not moved, he would have been struck by a spear.[5]

---

[4] We only recount the statement of facts as to the assault on a peace officer charge in count 3, as the other charges are not relevant to the issues raised on appeal.

[5] A video of the incident was played at trial. We have reviewed the video in connection with the appeal.

3

# DISCUSSION

## Jurors

Defendant contends the trial court should have removed juror No. 4 because he feared for his safety and also expressed that he did not "feel comfortable with [the other jurors'] decisions as a whole." Defendant further contends the court should have removed alternative juror No. 1 based on her intent to secure an immediate flight to China after her grandmother passed away the day before. We hold the trial court adequately inquired into these two juror's ability to continue as impartial jurors and did not abuse its discretion by leaving them on the jury for deliberations and verdict.

### *Relevant Facts*

The jury began deliberating on Friday, August 1, 2012, at 3:13 p.m., and recessed at 3:45 p.m. On the following Monday morning, the court held a sidebar discussion concerning possible removal of two jurors. The court stated that juror No. 12's mother was in the hospital and the court intended to excuse him. The court further stated juror No. 4 "now has concerns about safety," and that "defendant may, quote, come after him."

Juror No. 4 was brought before the court and addressed outside the presence of the balance of the jury. The court stated that juror No. 4 expressed some concern for his safety in serving as a juror on this case. The court reassured juror No. 4 that juror identifying information is sealed and no one can get that information without a court order. The court further stated, "I've been doing this job since 1992. I have presided over 272 murder trials -- [¶] -- and I've never had a problem ever with anyone trying to find jurors after a trial. I've never had a problem with any issues of possible retaliation. It just doesn't happen . . . . [¶] . . . And you can't let personal concerns, such as concerns for safety, enter into your deliberations or the way you look at the evidence."

4

The court explained to juror No. 4 that he would not be excused from the case. "I'm not letting you off the case. I need you to deliberate fairly on the evidence. Okay. And you've expressed a concern about your personal safety. We're way down the road here. I'm going to lose another juror today. We're going to be down to 12 jurors. What am I to do, try this case all over again because you're uncomfortable sitting on the jury? I don't think that's fair to the system when your fear is an unrealistic fear. [¶] Believe me, the law goes out of its way to protect jurors and it just doesn't happen. You're not in danger sitting as a juror and you can't let the nature of this case impact the way you decide the case. Your job as a juror, and you took an oath, is to judge the case fairly on the evidence. And that's what I need you to do, that's what I expect to do."

Juror No. 4 inquired what a good reason was to be excused. The court stated, "Well, I can tell you a good reason is . . . we're going to lose [juror No.] 12. His mother had a stroke yesterday and went into the hospital." Juror No. 4 agreed that that was a good reason.

Juror No. 4 then stated, "I just don't feel comfortable as a juror. I mean, those people out there, the 12 [jurors], I don't feel comfortable with it." The court responded, "Well, I don't know what you mean by you don't feel comfortable. Your job is to listen to the evidence. You've listened to it. Your job is to deliberate with the other jurors, to consider their opinions, to give your own opinions, and to hopefully come to a verdict. If you can't come to a verdict, that's another issue. But don't base your decision on concerns about safety." Juror No. 4 responded, "Okay." The court asked, "Can you do that for me?" Juror No. 4 said, "Yeah. I just wanted to express that I don't feel comfortable with [the other jurors'] decisions as a whole. " The court stated, "See, that's a different thing. You're saying you're uncomfortable with their decisions. You haven't even started deliberating. You got the case Friday at 3:30 or something, or 3:00 o'clock. The law expects that jurors will fairly evaluate the evidence in light of their reason and their common sense, and that they'll do so in collaboration with and in discussion with other jurors to get everyone's opinion and to hopefully come to a verdict. It's not required that you come to a verdict. It is required that you deliberate openly and fully

5

and completely and in good faith with other jurors.  [¶]  And so give it a chance.  I think it's very early in the game for you to be saying -- I don't know what you were saying, that you're uncomfortable with the other jurors.  Stick to your opinion of the evidence if it's based on your reason and your common sense, but listen to the others.  And if you can reach a verdict, fine.  If you can't, that's fine too . . . .  [¶]  But I can't let you go today because of this concern for personal safety, and don't make a decision based on that concern."  Juror No. 4 responded, "Okay."

In the presence of the jury, the court excused juror No. 12 and replaced him with the only remaining alternate, alternative juror No. 1.  Alternate juror No. 1 immediately stated that her grandmother passed away the day before and she needed to travel to China as soon as possible, however, she has not booked a ticket yet.  She further stated that if the travel agency does not contact her later that evening, she will take the 12:40 p.m. flight the next day.

At sidebar, defense counsel voiced his concern that alternative juror No. 1 "creates a situation where there would be a rush to judgment based on she wants to get out of here because she's going to fly for a funeral, I assume, or something like that."  The court told defense counsel that "[w]e take our jurors as we find them" and he will stress to the jurors to make an appropriate assessment of the evidence.  The court stated, "If we can get a verdict today, fine.  If we can't, then we'll have to see if the woman is able to get a plane fare."  Alternate juror No. 1 agreed to deliberate at least for that day.  Alternate juror No. 1 was now seated as juror No. 12.[6]  The court instructed the jury to begin deliberations anew.  The reconstituted jury reached verdicts later that day, including finding defendant not guilty of murder in count 1.

---

[6] All further references to alternate juror No. 1 will now be juror No. 12.

*Analysis*

"Section 1089 provide in relevant part: 'If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor, the court may order the juror to be discharged . . . .' 'The . . . ultimate decision whether to retain or discharge a juror[ ] rests within the sound discretion of the trial court. [Citation.] If any substantial evidence exists to support the trial court's exercise of its discretion pursuant to section 1089, the court's action will be upheld on appeal.' (*People v. Bradford* (1997) 15 Cal.4th 1229, 1351.) 'The juror's inability to perform must appear as a "demonstrable reality" and will not be presumed.' (*People v. Lucas* [(1995)] 12 Cal.4th [415,] 489.)" (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 485-486.)

Defendant's contention that juror No. 4's concern for his safety establishes bias or other ground for discharge fails. In *People v. Navarette* (2003) 30 Cal.4th 458, 500, our Supreme Court held that the trial court had not abused its discretion in declining to discharge a juror who had expressed fear of the defendant, explaining: "Defendant assumes that, because the juror had concerns about his family's safety and the safety of his property, he was therefore biased against defendant, requiring his removal. The record belies this assumption. The court specifically asked the jurors to report if they could no longer be fair and unbiased, and [the juror in question] did not pursue the matter further . . . ." The test of bias is not whether a juror may have been affected in some way by safety concerns or even a fear of the defendant, but whether the juror's decisionmaking process and, ultimately, the juror's ability to deliberate impartially was likely to be influenced. (*Id.* at p. 500; see *In re Hamilton* (1999) 20 Cal.4th 273, 306.) Here, the trial court also carefully inquired into juror No. 4's concerns, questioned him closely, and admonished him at some length. Juror No. 4 did not indicate any further problem with his ability to perform his duties as a juror and asserted his impartiality. No evidence indicated other jurors were even informed of his concerns. Defendant's

7

contention that juror No. 4 expressed an inability to deliberate with fellow jurors is unsupported by the record. The trial court instructed juror No. 4 that it was his job to evaluate the evidence in light of reason and common sense, and to collaborate with the other jurors. Juror No. 4 acknowledged that he understood. Defendant's speculation about juror No. 4's past state of mind or inability to deliberate is inadequate to establish his disqualification as a matter of law.

Defendant's argument that juror No. 12's personal concerns could have affected the thoroughness of the jury's deliberations does not establish that the trial court abused its discretion by failing to excuse the juror under section 1089. In *People v. Beeler* (1995) 9 Cal.4th 953, 986-991, our Supreme Court concluded there was no abuse of discretion where, after two days of deliberation, the jury returned a verdict less than an hour after being told that the court would recess proceedings for nearly a week to accommodate a juror's need to attend a funeral. Here, nothing in the court's handling of juror No. 12's concerns about traveling immediately to China could have been interpreted by the jury as suggesting that the court would limit the duration of the deliberations or that it believed only a quick deliberation was necessary to resolve defendant's case.

We emphasize, again, that the record belies any suggestion of juror bias. To the contrary, the jury acquitted defendant of the most serious charge in the case—murder, as alleged in count 1 of the information. The trial court acted within its discretion in deciding not to remove juror Nos. 4 and 12 from the jury.

**Sufficiency of the Evidence**

Defendant contends the evidence was insufficient to support his conviction in count 3 for assault on a peace officer with a deadly weapon.[7] He challenges the

---

[7] Section 245, subdivision (c) provides in pertinent part, "Any person who commits an assault with a deadly weapon or instrument . . . or by any means likely to produce great bodily injury upon the person of a peace officer . . . and who knows or reasonably should know that the victim is a peace officer . . . engaged in the performance

8

sufficiency of evidence to support the requisite intent.

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Avila* (2009) 46 Cal.4th 680, 701.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence. [Citation.]" (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).) "Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom. [Citation.]" (*People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064.) "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]' [Citation]." (*Zamudio, supra,* at p. 357.) "The standard of review is the same when the prosecution relies mainly on circumstantial evidence. [Citation.]" (*People v. Valdez* (2004) 32 Cal.4th 73, 104.)

The crime of assault with a deadly weapon on a peace officer (§ 245, subd. (c)) incorporates the statutory definition of "assault" set forth in section 240. (See *People v. Colantuono* (1994) 7 Cal.4th 206, 213-214 (*Colantuono*).) Thus, we begin our analysis with the applicable legal standard for assault. "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) An assault is merely "an incipient or inchoate battery," and an assault charge does not require proof of injury. (*Colantuono,* at p. 216.)

---

of his or her duties, when the peace officer . . . is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for three, four, or five years."

Regarding the mental state required for an assault or assault with a deadly weapon, "assault is a general intent crime," and thus the prosecution does not need to prove that the defendant had the specific intent to injure the victim. (*Colantuono, supra,* 7 Cal.4th at pp. 215-216; *People v. Williams* (2001) 26 Cal.4th 779, 784 (*Williams*).) A defendant is guilty of an assault if he commits an intentional act with actual knowledge of "facts sufficient to establish that his act by its nature will probably and directly result in physical force being applied to another, i.e., a battery. [Citation.] In other words, a defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally, and probably result from his or her conduct." (*Williams, supra,* at p. 788.) "'[T]he test of natural and probable consequences is an objective one,'" and does not turn on the defendant's subjective state of mind. (*Id.* at p. 790.)

Defendant argues that Deputy Felix was not the intended target "and that there was no reasonable likelihood that a battery of [Deputy] Felix would directly, naturally and probably result from [defendant's] conduct." There is no merit to his claims. Substantial evidence supports the jury's implied finding that defendant had the requisite mental state for assault on a peace officer with a deadly weapon. Defendant committed intentional acts (thrusting a makeshift spear tipped with a razor), and a reasonable person would know that such acts would probably and directly result in a battery upon Deputy Felix. The spear was thrust within 10 inches of Deputy Felix's abdomen and head. But for Deputy Felix's fortuitous maneuvering past the cells, he and inmate Johnson would have been stabbed by the spear. Based on these facts, the record contains amply evidence to support a finding that a battery would naturally and probably result from defendant's actions, and therefore to support a finding of assault on a peace officer with a deadly weapon.

**Fines**

The trial court imposed a $300 restitution fine pursuant to section 1202.4, and imposed and stayed the same amount pursuant to section 1202.45. The Attorney General concedes, and we agree, that the abstract of judgment be modified from $300 to $280 for both the restitution fine and parole revocation fine.

It is clear that the trial court intended to impose the minimum possible restitution fines. The court stated at the sentencing hearing, "The restitution fine is $300. *That's the minimum*. The parole revocation fine is $300, but stayed until such time, if ever, the defendant violates parole." (Italics added.) However, the minimum restitution fine under sections 1202.4 and 1202.45 at the time of defendant's 2013 crimes was $280, not $300, which was in effect at the time of his 2014 sentencing. (§ 1202.4, subd. (b)(1) [the restitution fine shall be no less than $280 starting on January 1, 2013, and $300 starting on January 1, 2014]; see § 1202.45, subd. (a) [the court shall assess an additional parole revocation fine in the same amount as imposed pursuant to section 1202.4, subdivision (b)].) We therefore direct the court to modify the abstract of judgment accordingly. (See, e.g., *People v. Souza* (2012) 54 Cal.4th 90, 143 [restitution order applying law in effect at the time of defendant's sentencing in 1999, rather than applicable at the time of the crimes in 1993 violated ex post facto clause].)

11

## DISPOSITION

The trial court is directed to prepare a corrected abstract of judgment to reflect a restitution fine of $280 pursuant to section 1202.4, and the imposition and suspension of a parole revocation fine in the same amount pursuant to section 1202.45. The court shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


KRIEGLER, J.

We concur:


TURNER, P. J.


MOSK, J.

12