Filed 1/7/26  P. v. Powell CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>KEVIN JAMES POWELL,<br><br>　　　Defendant and Appellant. | H052911<br>(Monterey County<br>Super. Ct. No. 22CR008305) |

Defendant Kevin James Powell attacked two brothers, Lucrecio and Israel Salvador Cabrera, at a motel.[1]  Lucrecio was able to escape after Powell swung an axe at him, but Israel died from injuries sustained when Powell attacked him with the axe and a knife.  A jury convicted Powell of first degree murder for Israel's death, and willful, deliberate, and premeditated attempted murder for the attack on Lucrecio.

Powell contends that his attempted murder conviction must be reversed because substantial evidence does not demonstrate he intended to kill Lucrecio.  We disagree and will affirm.

---

[1] For ease of reference and intending no disrespect, we will refer to the brothers by their first names.

# I. FACTUAL AND PROCEDURAL BACKGROUND

The prosecution charged Powell by amended information with murder (Pen. Code, § 187, subd. (a))[2] and attempted willful, deliberate, and premeditated murder (§§ 664, 187, subd. (a)).  The amended information alleged three enhancements on each count, including that Powell personally used a deadly and dangerous weapon (an axe) in committing the offenses.  (§ 12022, subd. (b)(1).)  The case was tried to a jury.

The prosecution presented the following evidence:  Lucrecio and Israel were staying in a motel in King City.  Powell was staying in the same motel.  On the evening of the charged offenses, Powell parked his car in the motel parking lot and then was captured on video walking around the motel, looking in room windows, and approaching residents who had their doors open.  As Powell was doing so, Lucrecio and Israel arrived at the motel and remained outside their room talking and looking at their phones, with Lucrecio standing and Israel eventually sitting on the pavement.  Powell then got into his car and drove away before returning soon thereafter, ultimately backing into a parking space directly in front of where Lucrecio and Israel were located.

Powell then got out of his car, retrieved an axe from the back seat, and attacked Lucrecio and Israel.  He swung the axe once at Lucrecio using two hands, striking Lucrecio in the shoulder.  Lucrecio ran away as Powell swung at him a second time, missing Lucrecio.  Powell then immediately struck Israel with the axe several times.  Israel attempted to flee and defend himself, finally dislodging the axe from Powell.  Powell then pulled out a kitchen knife and stabbed Israel repeatedly.  Israel then was able to retreat.  Powell retrieved his axe and other belongings and returned to his car, driving away.

The prosecution introduced videos of Powell's actions at the motel that evening, including the attack on the brothers.  Lucrecio testified that Powell did not say anything,

---

[2] Unspecified statutory references are to the Penal Code.

that he and Israel had never seen Powell before, and that he did not see the attack coming before it happened. Lucrecio testified that he sustained a blow to the shoulder resulting in swelling that lasted "a day or a week." A pathologist testified that Israel died from "extensive hemorrhaging or bleeding out due to stab wound of the neck." A contributing cause of Israel's death was a "chop wound and . . . other sharp force injury." The pathologist stated that a "chop wound" is caused by "a heavy object or tool like an axe." Law enforcement officers testified about items found in Powell's residence and car, including the axe. An investigator stated the axe was 33 inches long, with a four-pound head and a blade four inches wide. The investigator characterized the axe as a "wood splitting axe," stating it was "[n]ot particularly sharp and it was rusty."

Powell testified in his own defense. He stated that he had been using methamphetamine for several years, which caused him to be paranoid and experience delusions about his loved ones being hurt. On the evening of the charged offenses, he had been using methamphetamine and he believed his mother was calling to him, so he tried to look for her at the motel. He testified that he attacked Lucrecio and Israel because in his state he believed they were holding and sexually assaulting his mother.

On cross-examination, Powell said he had the axe and knife for protection. He denied intending to kill Lucrecio and Israel when he attacked them with the axe, stating that he intended to "hurt them." However, the prosecutor then asked Powell if he attacked Israel with the axe and knife "because you meant to kill him," and Powell replied affirmatively. Later, the prosecutor asked Powell: "At what moment exactly that day did you decide that you were going to try and kill these guys?" Powell replied: "I did not decide that day. It was planned [*sic*]." The prosecutor then asked: "The circumstances leading up to you attacking the victims with the axe and trying to kill

3

them, that was all coincidental and that you didn't decide to attack them until the moment that you stepped out of your car?" Powell replied: "Until I heard my mother's voice."

A defense expert in methamphetamine induced psychiatric disorders opined that Powell experienced "a psychotic disorder that was induced by methamphetamine use or methamphetamine dependence." Powell's girlfriend and stepfather testified as to Powell's methamphetamine use and delusions. Powell's mother similarly testified as to Powell's methamphetamine use and paranoia. She also testified that after the charged offenses, Powell came to the house and told her, " 'I just killed somebody.' " Powell explained to his mother that he took this action because he thought she was being sexually assaulted in a room.

The trial court instructed the jury that to convict Powell on the attempted murder count, the prosecution must prove Powell "took at least one direct but ineffective step toward killing another person" and Powell "intended to kill that person." The prosecutor argued that Powell intended to kill Lucrecio, citing Powell's testimony that he intended to kill Israel and stating that Powell could be found guilty of attempted murder even though Lucrecio was not seriously injured. Powell's counsel conceded in his closing argument that Powell was guilty of second degree murder and attempted murder. However, counsel argued that due to Powell's delusions from methamphetamine use, Powell did not commit first degree murder and did not act with deliberation and premeditation on the attempted murder count.

The jury convicted Powell of first degree murder and of attempted willful, deliberate, and premediated murder. The jury found true the allegation that Powell personally used a deadly weapon in the commission of both offenses. The trial court then

4

found true allegations that Powell suffered a prior serious felony conviction (§ 667, subd. (a)(1)) and a prior strike conviction (§ 1170.12, subd. (c)(1)).

The trial court sentenced Powell to 12 years in prison plus 50 years to life, plus a consecutive life term. This appeal timely followed.

## II. DISCUSSION

Powell does not challenge his first degree murder conviction or the jury's finding that he used a deadly weapon in committing both charged offenses. He does not dispute that he swung the axe at Lucrecio and hit Lucrecio in the shoulder, or that this act constituted a direct but ineffectual step toward killing Lucrecio. His sole contention is that attempted murder requires proof of intent to kill, and insufficient evidence supports the jury's finding that he intended to kill Lucrecio. The Attorney General responds that intent to kill may be inferred from the circumstances leading up to and during the attack. We conclude that substantial evidence supports the jury's finding that Powell intended to kill Lucrecio.

### A. *Legal Principles and Standard of Review*

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one." (*People v. Smith* (2005) 37 Cal.4th 733, 738 (*Smith*).) "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" (*People v. Jones* (1990) 51 Cal.3d 294, 314 (*Jones*).) "Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom. [Citation.]" (*People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064.)

"Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the

5

credibility of a witness and the truth or falsity of the facts on which that determination depends.  [Citation.]  Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.  [Citations.]"  (*Jones*, *supra*, 51 Cal.3d at p. 314.)

### B. *Analysis*

Under the deferential substantial evidence standard, presuming in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence, substantial evidence supports the jury's finding that Powell intended to kill Lucrecio.

The manner of Powell's attack supports the jury's finding that Powell intended to kill Lucrecio.  Evidence as to the manner of an attack may support a finding of intent to kill.  (See *People v. San Nicolas* (2004) 34 Cal.4th 614, 658-659.)  Powell swung at Lucrecio twice with a large axe.  The video depicts Powell swinging suddenly and forcefully with a sidearm or overhand motion.  The first blow was to Lucrecio's upper body, and the second swing as Lucrecio began to flee appears to have just missed Lucrecio's upper body as well.  While the axe was described at trial as "[n]ot particularly sharp" and "rusty," photographs of the axe introduced into evidence support the jury's finding that the axe was nonetheless a deadly weapon.  In addition, the axe caused a chop wound that the pathologist determined was a contributor to Israel's cause of death.  The prosecutor correctly noted in her closing argument that the video shows Powell directing his swings at "Lucrecio's center mass."  The jury could reasonably conclude that Powell intended to kill Lucrecio by swinging a large wood splitting axe at Lucrecio's upper body in a violent attack.

Powell argues the axe "is not a deadly weapon per se," asserting the mere possession of the axe in his car could not support a finding he intended to kill Lucrecio with it.  However, both cases on which he relies recognize that an object may be a "deadly weapon" if used as such.  (See *People v. McCoy* (1944) 25 Cal.2d 177, 185 [affirming conviction for assault with a deadly weapon where defendant assaulted victim

6

with a knife because "[w]hile a knife is not an inherently dangerous or deadly instrument as a matter of law, it may assume such characteristics, depending on the manner in which it was used, and there arises a mixed question of law and fact which the jury must determine under proper instructions from the trial court"]; *In re B.M.* (2018) 6 Cal.5th 528, 535-536 [concluding juvenile court's finding that minor used a butter knife as a deadly weapon was not supported by substantial evidence, but recognizing "[a]lthough it is inappropriate to consider how the object could have been used as opposed to how it was actually used, it is appropriate in the deadly weapon inquiry to consider what harm could have resulted from the way the object was actually used"].)  Here, the violent manner in which Powell actually used the axe, and his strikes at Lucrecio's upper body with full force, support a finding of intent to kill.  According due deference to the trier of fact and viewing the evidence in the light most favorable to the People, the jury's finding that Powell swung the axe with intent to kill Lucrecio is reasonable.

That Powell failed to warn Lucrecio of the impending attack further supports the jury's finding of intent to kill.  Lucrecio was unarmed and caught unaware.  He testified that he had never met Powell before and that Powell and the two brothers exchanged no words.  Lucrecio testified that he did not see the attack occur before he was struck, and the video evidence supports this testimony.  The jury could reasonably conclude that Powell intended to kill by twice swinging an axe at Lucrecio when Lucrecio could not defend himself.  (See *People v. Avila* (2009) 46 Cal.4th 680, 701-702 [defendant repeatedly attempting to stab "unarmed and trapped victim" and succeeding in stabbing victim in the arm and leg "alone is substantial evidence of defendant's intent to kill"]; *People v. Bolden* (2002) 29 Cal.4th 515, 561 ["In plunging the knife so deeply into . . . a vital area of the body of an apparently unsuspecting and defenseless victim, defendant could have had no other intent than to kill"]; *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1552 [intent to kill established by evidence of "unprovoked attack that rendered the unarmed victim prone and defenseless" as defendant repeatedly stabbed the victim with a

7

shank].)  That Powell then focused on Israel when Lucrecio succeeded in moving out of the range of the axe does not negate the significance of the unprovoked attack on the equally defenseless Lucrecio as evidence of Powell's intent to kill him.

Finally, Powell's motive supports the finding that he intended to kill Lucrecio. "[W]here motive is shown, such evidence will usually be probative of proof of intent to kill." (*Smith*, *supra*, 37 Cal.4th at p. 742.)  Powell testified that he believed his mother was being held and sexually assaulted in the room both Lucrecio and Israel occupied. Powell attacked Lucrecio first and then immediately turned his attack to Israel as Lucrecio fled, killing Israel.  After denying that he intended to kill the brothers with the axe, Powell then admitted on cross-examination that he intended to kill Israel when he attacked Israel with the axe and knife.  Powell had the same motive to attack both Lucrecio and Israel:  his delusion that the brothers were holding and abusing his mother in their room.  The jury could reasonably infer that Powell intended to kill Lucrecio because Powell attacked the two brothers together, and Powell had the same motive in his attacks on both brothers.

Powell argues that his intent to kill Israel cannot be transferred to Lucrecio to prove attempted murder.  We agree.  "To be guilty of attempted murder, the defendant must intend to kill the alleged victim, not someone else.  The defendant's mental state must be examined as to each alleged attempted murder victim." (*People v. Bland* (2002) 28 Cal.4th 313, 328 (*Bland*).)  However, in examining the intent to kill element independently as to each alleged victim, on the facts we describe above, the jury could reasonably conclude that Powell's admitted intent to kill Israel supported the inference that Powell also separately and independently intended to kill Lucrecio.

The California Supreme Court's opinion in *People v. Sanchez* (2016) 63 Cal.4th 411 is instructive here.  In *Sanchez*, the defendant was convicted of the first degree murder of a police officer and the attempted murder of a second victim, among other offenses.  (*Id.* at pp. 419-420.)  Sanchez shot the officer to death during a robbery when

8

the officer responded to a silent alarm, stating, " 'You're going to die.' " (*Id.* at pp. 420, 428.) Sanchez then aimed his gun at a second victim and fired, but the gun was empty. (*Id.* at p. 428.) Sanchez argued that substantial evidence did not demonstrate his intent to kill the attempted murder victim. (*Id.* at p. 457.) The California Supreme Court rejected this argument, in part concluding that Sanchez shot and killed the officer "[o]nly seconds before he pointed the gun" at the second victim, and that Sanchez could have had the same motive to shoot both victims—they were in Sanchez's way. (*Ibid.*)

Similarly here, Powell's attacks against both brothers were nearly simultaneous, and arose from the same paranoid ideation. Powell swung his axe at Lucrecio before turning his attack to Israel. Lucrecio, who was standing, succeeded in escaping and thus survived. Israel, who was sitting and thus had a more difficult time fleeing, was not so fortunate. Powell admitted his intent to kill Israel, and his motive for attacking both brothers was the same.

As Powell recognizes, "[d]irect evidence of intent to kill is rare, and ordinarily the intent to kill must be inferred from the statements and actions of the defendant and the circumstances surrounding the crime. [Citations.]" (*Canizales*, *supra*, 7 Cal.5th at p. 602.) "One who intentionally attempts to kill another does not often declare his state of mind either before, at, or after the moment he shoots. Absent such direct evidence, the intent obviously must be derived from all the circumstances of the attempt, including the putative killer's actions and words. Whether a defendant possessed the requisite intent to kill is, of course, a question for the trier of fact. While reasonable minds may differ on the resolution of that issue, our sole function is to determine if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citations.]" (*People v. Lashley* (1991) 1 Cal.App.4th 938, 945-946.) Here, a rational

9

trier of fact could have concluded that Powell intended to kill both Lucrecio and Israel, based all the circumstances of the attempt.

Powell primarily relies on *People v. Ratliff* (1986) 41 Cal.3d 675 (*Ratliff*) to assert that the prosecution did not demonstrate he intended to kill Lucrecio. Ratliff shot a gas station attendant to death and wounded the deceased victim's associate in the shooting. (*Id.* at pp. 683-684.) The trial court failed to instruct the jury that a specific intent to kill was required to convict Ratliff of attempted murder. (*Id.* at p. 695.) The California Supreme Court concluded the error was not harmless, rejecting the notion that the jury necessarily concluded Ratliff had the intent to kill the surviving victim where he shot the surviving victim immediately after demanding money from and shooting the deceased victim. (*Ibid.*) Our Supreme Court stated: "Although it seems clear that defendant had the *intent to shoot* and thus disable his victims, there was no further evidence of a specific *intent to kill* necessary to sustain an attempted murder conviction." (*Ibid.*) Powell argues: "If the precise use of a uniquely deadly weapon (such as the firearm used in *Ratliff*) is not sufficient to dispel prejudice from an instructional error, an imprecise attack with a rusty old ax, inflicting a single blow to an extremity that under ordinary circumstances would not result in death, and which in this case resulted only in swelling of soft tissue, cannot be substantial enough to prove the defendant guilty of committing attempted murder beyond a reasonable doubt."

But *Ratliff* held that the defendant's act of shooting at two victims did not render the instructional error harmless because the defendant's act did not necessarily demonstrate he had the intent to kill the surviving victim. Our standard of review here is limited and deferential: we determine whether a rational trier of fact *could* have found the defendant guilty beyond a reasonable doubt based on the record before us. As Powell

10

recognizes, *Ratliff*'s analysis was "employed in a different context," a difference that renders *Ratliff* inapposite.

Powell brutally attacked both brothers with a large axe. Lucrecio was hit in the shoulder and a second swing narrowly missed Lucrecio as he scrambled to escape. Lucrecio had no warning or opportunity to defend himself. As the jury concluded and as Powell admitted on cross-examination, Powell intended to kill Israel, and the same motive Powell possessed for Israel applied equally to Lucrecio as they were similarly associated with the room where he believed his mother was held. Under our deferential standard of review, we conclude that substantial evidence supports Powell's attempted murder conviction.

### III. DISPOSITION

The judgment is affirmed.

_____
Greenwood, P. J.

WE CONCUR:


_____
Danner, J.


_____
Bromberg, J.


H052911 People v. Powell