Filed 2/26/26  P. v. Chanhnoy CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JEYLAN DENDAI CHANHNOY,<br><br>    Defendant and Appellant. | C100431<br><br>(Super. Ct. No. MAN-CR-FECOD-2020-0007257) |

A jury found defendant Jeylan Dendai Chanhnoy guilty of the willful, deliberate, and premeditated first degree murder of Raul Rodriguez during a drive-by shooting in front of Rodriguez's house.  The jury specifically found that the murder was caused by defendant's discharge of a firearm from a vehicle with the intent to cause death.  Although defendant concedes he fired the shot that killed Rodriguez, he contends there was insufficient evidence that he intended to kill him.  We disagree and affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Rodriguez's son lived with his parents (Rodriguez and mother) at their home at the corner of D. Drive and C. Drive in Tracy. Son came to know defendant while they were in juvenile hall. They had an altercation there, but "[i]t was dropped." After they got out of juvenile hall, they stayed in touch over social media. Defendant's social media included a photo of himself with a bottle of promethazine and a price.

In March 2020, son bought promethazine from defendant and paid him $120 via online payment using mother's bank account. Shortly thereafter, defendant dropped off the promethazine at son's house. Mother soon cancelled the payment. Son told defendant he would try to get him the money but never did.

On April 24, 2020, Rodriguez was working on cars in his driveway and in the street (D. Drive) in front of his driveway. According to a police officer, a gray car was seen travelling north on C. toward D. The car then made a U-turn on C., and defendant got out of the car. Surveillance video from Rodriguez's home showed defendant walking north on C. toward D. at 1:22:18 p.m. At 1:22:35 p.m., defendant walked on the sidewalk in front of Rodriguez's house while Rodriguez was between an SUV and a smaller car in his driveway. Then at 1:22:57 p.m., defendant walked in the opposite direction in front of Rodriguez's house; Rodriguez is not visible in that video. At 1:23:10 p.m., defendant walked south on C. A police officer testified that the gray car then picked up defendant. The car looped around the block and passed in front of Rodriguez's house at 1:25:53 p.m. A shot fired from the car, hitting Rodriguez, who was in the driveway between the SUV and the smaller car. Additional shots can be heard in the video as the car exits the video frame. The car was later spotted "racing" down C. Rodriguez's next-door neighbor (neighbor) told an officer he was working on his motorcycle when he heard the shots. He saw a guy's arm hanging out a window shooting "right at [Rodriguez]."

Rodriguez suffered a single gunshot wound to the "upper part of the buttock on the side." The bullet went through his abdominal cavity and settled in his lower abdomen.

Rodriguez was later pronounced dead at the hospital due to blood loss. A forensic pathologist testified he had "no way of determining what the range was or how close the muzzle was to Mr. Rodriguez when the gun was fired" because he did not have Rodriguez's clothing.

The gray car was owned by the mother of codefendant Joseph Arquilada, Jr. Earlier in the day, defendant had messaged codefendant, "Come today." Codefendant responded, "I just drove past the blocc no one outside" followed by "omw." Defendant replied, "Just woke up" and "Finna go buss a sale rn." Codefendant then messaged, "I'm right here in traffic do imma post up outside," and defendant replied, "Yup" and "It's good."

After the shooting, son texted defendant that "someone had [come] and shot [his] house up." Defendant responded, "I'm sorry for your loss."

Defendant later messaged codefendant: "Aye bruh kno it's me I think"; "But I played it off so he really don't"; "He keep saying he got video"; and "I just played innocent."

Defendant was charged with murder, among other charges. (Pen. Code, § 187, subd. (a).) The court instructed the jury on two theories of first degree murder: (1) willful, premeditated, and deliberate murder; and (2) murder by shooting a firearm from a motor vehicle. Both theories required the jury find defendant intended to kill. During closing argument, defense counsel argued the evidence, at most, showed intent to scare not to kill. The jury found defendant guilty of willful, deliberate, and premeditated first degree murder, specifically finding that the murder was caused by the discharge of a firearm from a vehicle with intent to cause death. (Pen. Code, § 190.2, subd. (a)(21).)

Defendant timely appeals.

## DISCUSSION

Defendant does not dispute he shot Rodriguez, but he contends the first degree murder conviction must be reversed because the evidence fails to establish he acted with

3

intent to kill. Assuming we agree with that contention, he contends we cannot reduce the conviction to second degree murder because the evidence also fails to establish he acted with implied malice. We conclude there was sufficient evidence of intent to kill, so we need not address whether defendant had implied malice.

In reviewing a sufficiency of evidence claim, we review the entire record to determine if it contains substantial evidence – evidence that is reasonable, credible, and of solid value – from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Avila* (2009) 46 Cal.4th 680, 701.) "Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom. [Citation.]" (*People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064.) "When making this determination, '[w]e view the evidence in the light most favorable to the prosecution[] and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Foster* (2021) 61 Cal.App.5th 430, 440.) A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis [whatsoever] is there sufficient substantial evidence to support' " the jury's verdict. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Intent to kill "requires more than knowingly placing the victim's life in danger." (*People v. Smith* (2005) 37 Cal.4th 733, 751 (*Smith*).) The perpetrator must either desire the resulting death or know to a substantial certainty that death will occur. (*Ibid*.) Citing *People v. Meriweather* (1968) 263 Cal.App.2d 559 and *People v. Lashley* (1991) 1 Cal.App.4th 938 (*Lashley*), defendant contends there was insufficient evidence he intended to kill Rodriguez because he did not shoot him at close range and there was no evidence he threatened to kill or harm him. We are not persuaded. Intent to kill does not require threats or close-range use of a weapon. That those elements were present in *Meriweather* and *Lashley* did not make them mandatory intent-to-kill elements. Also, "[w]hen we decide issues of sufficiency of evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts." (*People v. Thomas*

4

(1992) 2 Cal.4th 489, 516.)  Although the facts surrounding the shooting here were different from those in *Lashley* and *Meriweather*, they were sufficient to find intent to kill, as we explain next.

In most cases, a perpetrator's intent must be inferred from his actions and the circumstances surrounding the crime.  (*People v. Canizales* (2019) 7 Cal.5th 591, 602.)  A shooter's purposeful use of a lethal weapon with lethal force against the victim gives rise to an inference of intent to kill.  (*Smith, supra*, 37 Cal.4th at p. 742.)  Here, based on codefendant's message to defendant earlier that day that "no one [was] outside" when codefendant drove by, a jury could reasonably infer that:  (1) defendant walked by Rodriguez's house to determine whether that was still the case; and (2) after seeing Rodriguez in the driveway, defendant walked back to the car, circled the block in the car, and specifically shot *at* Rodriguez.  That inference is supported by neighbor's statement to police that defendant "shot right at [Rodriguez]" and by the evidence that defendant had a motive to set an example for other promethazine purchasers and punish son and his family for cancelling son's promethazine payment.  (*Smith,* at p. 741 [evidence of motive is probative of intent to kill]; *People v. Jackson* (1989) 49 Cal.3d 1170, 1200 [" '[T]he law does not require that a first degree murderer have a "rational" motive for killing' "].)

Defendant contends it is "unlikely" he would have been aware of Rodriguez's presence or location until he drove past Rodriguez's driveway because (1) defendant was moving at a "relatively fast speed," (2) Rodriguez was not in the same place while he was outside, and (3) the car in the street in front of Rodriguez's house and the SUV in the driveway would have blocked defendant's view of Rodriguez.  This contention presents one possible interpretation of the evidence but not the only interpretation.  Another reasonable interpretation is that defendant spotted Rodriguez working between the cars when he walked by and either spotted Rodriguez again in that position when he drove past or knew he was likely to be there.  Because there was sufficient evidence for the

5

second interpretation supporting the verdict, we must uphold it. (*People v. Babcock* (1993) 14 Cal.App.4th 383, 388.)

Defendant also contends he "was not at a close range" when he fired the shot that struck Rodriguez. But he does not provide any authority defining "close range" or requiring "close range" for a bullet directed at a person that causes the person's death. (See *People v. Villegas* (2001) 92 Cal.App.4th 1217, 1224-1225 [25 feet]; *Lashley, supra*, 1 Cal.App.4th at pp. 943, fn. 2, 945 [20 yards].) The inference that defendant purposefully fired a weapon at Rodriguez at *close enough* range to actually inflict a mortal wound is sufficient to find an intent to kill. (*Lashley*, at p. 945 [act of firing a rifle toward victim at a range and in a manner that could have inflicted a mortal wound sufficient to support intent to kill].) Because the bullet proved fatal, the fact that it struck Rodriguez's buttocks rather than a more vital area is irrelevant. (See *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1552 [missing vital area was fortuitous rather than indicative of absence of intent to kill].) The jury was free to reject defendant's argument that he fired the gun merely to scare son and his family or to inflict a nonmortal wound. (See *Lashley*, at p. 946.) The circumstances reasonably justify the jury's finding, so reversal is unwarranted. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

DISPOSITION

The judgment is affirmed.

/s/
MESIWALA, J.

We concur:

/s/
DUARTE, Acting P. J.

/s/
RENNER, J.